Louis Sabral **RAMIREZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 05–90–00023–CR.

Court of Appeals of Texas, Dallas.

July 30, 1993.

Rehearing Denied Sept. 29, 1993.

Lawrence B. Mitchell, Dallas, for appellant.

Jeffrey B. Keck, Dallas, for appellee.

Before KINKEADE, CHAPMAN and ROSENBERG, JJ.

## OPINION ON REMAND AFTER REHEARING

ROSENBERG, Justice.

The State's motion for rehearing is granted. Our opinion of July 24, 1992 is withdrawn. The following is now the Court's opinion.

Louis Sabral Ramirez was convicted by a jury of the offense of delivery of heroin. The jury assessed punishment at thirty-five years' confinement and a fine of $15,000. Upon original submission to this Court, Ramirez, an Hispanic, brought one point of error contending the State committed *Batson*[1] error by peremptorily challenging a member of his race on racial grounds and five points of error claiming *Batson* error resulting from the State's challenges to members of a different racial group. In our original opinion, we overruled his point of error regarding the strike against the Hispanic venireperson and, based on the state of the law at the time, determined that he could not challenge the State's strikes against members of minority races other than his own and declined to consider his remaining five points of error.[2] The Court of Criminal Appeals granted Ramirez's petition for discretionary review and reversed our judgment and remanded this cause for consideration of appellant's remaining five points of error in light of *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (defendant may object to race-based exclusion of venireperson regardless of whether venireperson is of the same race as defendant). Because the State exercised its peremptory challenges in a racially discriminatory manner, we reverse and remand this cause to the trial court.

After submission in the original remand to this Court, we, in the interest of justice, ordered the filing of a supplemental transcript containing the strike lists and the juror information cards. Then, based on a comparative analysis of African–American and non-minority veniremembers, we held that the State exercised its peremptory challenges in a racially discriminatory manner.

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. *Ramirez v. State*, No. 05–90–00023–CR (Tex. App.—Dallas, October 26, 1990), *rev'd*, No. 1195–90 (Tex.Crim.App. November 6, 1991).

The State filed a motion for rehearing, claiming that this Court had no authority to *sua sponte* supplement the record and that such an action did not allow the State to brief the legal issues involved with the full knowledge of the contents of the record on appeal.

This Court has the authority to order the record supplemented after submission pursuant to rule 55(c) of the Texas Rules of Appellate Procedure. TEX.R.APP.P. 55(c); *see Guilder v. State,* 794 S.W.2d 765, 771–72 (Tex.App.—Dallas 1990, no pet.) (op. on reh'g). We granted the State's motion, however, to provide the State the opportunity to fully brief the legal issues involved.

When the Court of Criminal Appeals remanded this case, we were directed to consider Ramirez's points of error two through six. Those points urge that a comparative analysis of the potential jurors' characteristics reveals disparate treatment between African–American and non-minority veniremembers. The State contends that the law of the case doctrine operates to preclude a comparison analysis between African–American and non-minority veniremembers. On original submission, this Court did not allow a comparison analysis regarding white veniremembers whose relatives had been in trouble with the law because such a comparison was not presented to the trial court. The State asserts this legal determination became the law of the case when Ramirez did not attack its correctness in his petition for discretionary review. We disagree.

▪ On remand, this Court cannot refuse to apply the law. An appellant's failure to urge a comparative analysis approach in the trial court cannot, as a matter of law, operate as a waiver of his right to assert comparative analysis on appeal. *Young v. State,* 826 S.W.2d 141, 146 (Tex.Crim.App. 1991). The law of the case doctrine does not preclude consideration of Ramirez's complaints in light of *Young v. State.*

In points of error two, three, and five, Ramirez complains that prospective jurors Marilyn Giles, Charles Christian, and Ozzie Taylor were improperly struck. The prosecutor recited as his reason for striking each of these individuals that they had relatives who had been in trouble with the law. Ramirez asserts that there was a lack of meaningful questioning of these individuals to determine whether they could be fair and impartial. He also asserts there were other, non-minority veniremembers who also had relatives who had been involved with the law but who were not struck by the prosecutor.

The State asserts that the impact of a comparative analysis between African–American and non-minority veniremembers is slight at the appellate level. The State urges that the effectiveness of such a comparison is lessened because of the standard of appellate review applied to *Batson* claims. *See Young,* 826 S.W.2d at 152. According to the State, other appellate courts have been reluctant to declare a trial court's rejection of a comparative analysis attack on facially neutral explanations as "clearly erroneous." *See Green v. State,* 839 S.W.2d 935, 939 (Tex.App.—Waco 1992, pet. ref'd); *Lemon v. State,* 837 S.W.2d 163, 169 (Tex.App.—El Paso 1992, pet. granted). The State argues, nevertheless, that a fair reading of the record shows that the "similarly situated" non-minority veniremembers had relatives who were "more distant" than those of the African–American veniremembers.

▪ The United States Supreme Court held that the Equal Protection Clause forbids the State from challenging potential jurors on the basis of their race. *Batson,* 476 U.S. at 89, 106 S.Ct. at 1719. A defendant may invoke the protection of *Batson* with a prima facie showing of purposeful discrimination established in a trial court hearing in which the prosecutor states reasons for excluding minority veniremembers. *Salazar v. State,* 795 S.W.2d 187, 192 (Tex.Crim.App.1990). Once a prima facie case has been established, the burden then shifts to the State to come forward and articulate a racially neutral explanation for striking particular minority venirepersons. *Batson,* 476 U.S. at 96–97, 106 S.Ct. at 1722–23. The trial court must then examine each of the prosecutor's reasons for striking a potential minority juror within the circumstances of the particular case to determine whether the neutral explanation for the strike is really a pretext for a racially motivated peremptory challenge.

In making this determination, the trial court must ascertain whether the prosecutor has articulated clear and reasonably specific "legitimate reasons" for striking the veniremember. *Id.* at 98, 106 S.Ct. at 1724. This inquiry includes assessing the entirety of the voir dire both objectively and subjectively. *See Keeton v. State,* 749 S.W.2d 861, 866 (Tex.Crim.App.1988). The judge may reflect upon his own personal experiences with voir dire examinations and compare his observations and assessments of veniremembers with those articulated by the State. The judge may also consider his personal experiences with the particular prosecutor representing the State and any evidence offered by the defendant to show a pattern or practice of purposeful discrimination. *Id.* The trial court's determination that the prosecution has rebutted the prima facie case will not be reversed on appeal unless it is clearly erroneous. *Whitsey v. State,* 796 S.W.2d 707, 727 (Tex.Crim.App.1990) (op. on reh'g); *Tennard v. State,* 802 S.W.2d 678, 680 (Tex.Crim. App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Whitsey,* 796 S.W.2d at 721 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

When considering a *Batson* challenge on appeal, we must review the evidence in the light most favorable to the trial judge's ruling and then decide if the record supports that ruling. *Whitsey,* 796 S.W.2d at 721. A finding of purposeful discrimination is a finding of fact based largely upon the trial judge's evaluation of credibility, and great deference should be accorded to such finding. *Id.* We will not substitute our judgment of the witness's credibility and evidentiary weight for that of the fact finder. In order to sustain the trial court's findings, we must find that, as to each veniremember struck, the trial court's decision was not clearly erroneous. The use of one purely racially motivated strike is prohibited by *Batson. Whitsey,* 796 S.W.2d at 727; *see Tompkins v. State,* 774 S.W.2d 195, 202 (Tex.Crim.App. 1987). If the record supports the trial judge's finding, it will not be disturbed on appeal. *Keeton,* 749 S.W.2d at 870.

Once the prosecutor gives a racially neutral explanation that can legally support a judgment in the State's favor, he presents a fact issue that the trial judge can resolve only by assessing the weight and credibility of the evidence. *Tompkins,* 774 S.W.2d at 202. It is the *defendant* who bears the ultimate burden of proving that the prosecutor exercised the State's peremptory strikes in a discriminatory fashion. *Id.* The defendant may meet this burden by utilizing a comparative analysis of African–American and non-minority veniremembers to show disparate treatment of potential jurors. Although a defendant may assert a comparative analysis for the first time on appeal, our standard of review remains the same. We do not consider the comparative analysis to decide whether the prosecutor's explanations were believable, but rather we look to the record evidence to determine whether the trial judge's findings and conclusions are supported by the facts in the record. *Young,* 826 S.W.2d at 153. We review the record to determine whether it supports the trial judge's finding that the State's use of its peremptory strikes was proper.

Our review of the transcript of voir dire proceedings reveals that at least seven veniremembers, other than Giles, Christian, and Taylor, stated that they had relatives who had been in trouble with the law.[3] They were: Scott Williams, Carol McElhannon, Sue Ann Booth, Loretta Armstrong, Martha Lobaugh, Kermit Grundy, and Lezlie Luigs. Of those seven, Williams, McElhannon, Booth, Armstrong, and Lobaugh served on the jury. During the *Batson* hearing, defense counsel stated on the record that there were no African–Americans on the jury. His statement was not denied by the State or the trial court. While the State argues that the record is ambiguous on this point, we conclude that the jury was made up of white

---

**3.** One other veniremember stated that he "had a brother that was in a bank robbery." There is no explanation as to his brother's role in the robbery.

jurors only. Williams, McElhannon, Booth, Armstrong, and Lobaugh, who were similarly situated to the struck African–Americans, were not struck by the State.

We are not persuaded by the State's contention that the non-minority venirepersons' relatives were more distant in relation than those of the struck African–American veniremembers. The relationships between the struck African–Americans and their relatives consisted of nephews, a sister, a stepson, and "relatives and friends." The non-minority venirepersons described the following relationships: a cousin, a distant relative, a close family member, a nephew, and distant relatives. We perceive no significant differences in the relationships described by the excluded African–American venirepersons and the non-minority veniremembers who served on the jury. On the contrary, we find it significant that the prosecutor did not develop a record that demonstrated the veniremember's relationship with the relative. Although venireperson Booth described having a close family member in trouble with the law, the prosecutor did not question Booth to determine her relationship with this relative or its effect on Booth as a potential juror. The prosecutor did not develop a record that indicates a qualitative difference between the struck African–American veniremembers and the non-minority jurors in question.

Our review of the State's strike list and the juror information cards reveals that of those seven similarly situated veniremembers, all but Grundy and Luigs were clearly within striking distance for the State. As the jury was made up of white jurors, we can only conclude that the State treated similarly situated non-minority and African–American veniremembers differently.

We conclude that the trial court's findings of no purposeful discrimination as to veniremembers Giles, Christian, and Taylor are clearly erroneous. *Whitsey*, 796 S.W.2d at 721. Because a careful review of the record leaves this Court with the definite and firm conviction that the trial court committed error, we sustain points of error two, three, and five.

The use of only one purely racially motivated strike is prohibited and necessitates reversal. We have determined the State used three of its strikes in a racially discriminatory manner; therefore, we need not reach points of error four and six.

We reverse the trial court's judgment and remand this cause for a new trial.