Linda R. **BENAVIDES**, Individually and as Next Friend of Her Minor Children, David Roger Benavides and Paul Anthony Benavides, and as Heir and Personal Representative of the Estate of Her Deceased Husband, Rogelio (Roger) Benavides, Appellant,

v.

**AMERICAN CHROME & CHEMICALS, INC.**, Appellee.

No. 13–93–256–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 22, 1994.

Rehearing Overruled Jan. 19, 1995.

William R. Edwards, III, Edwards, Terry, Baiamonte & Edwards, William R. Edwards, Edwards & Terry, Corpus Christi, for appellant.

Tom Hermansen, Raymond C. Alexander, Hunt, Hermansen, McKibben & Barger, Corpus Christi, for appellee.

Before KENNEDY, FEDERICO G. HINOJOSA, Jr., and YAÑEZ, JJ.

## OPINION

KENNEDY, Justice.

Linda Benavides appeals from an adverse judgment in her suit against American Chrome & Chemicals, Inc ("ACC"). We reverse and remand for a new trial.

Because we reverse on a procedural point, we will discuss the underlying facts only briefly. Benavides alleged damages arising from gross negligence in connection with her husband's death. He died when the top of the ACC storage tank across which he was walking collapsed, plunging him into a solution of the caustic chemical sodium sulfide.

At trial, the court summoned a thirty-two-member jury panel. Eight members were Hispanic. After challenges for cause, twenty-four veniremembers remained, seven of whom were Hispanic. ACC's attorney used five of his six peremptory strikes against Hispanic panelists. The remaining two Hispanic panelists were selected for the jury. Benavides moved for a Batson [1] hearing to determine if the strikes were racially motivated.

ACC's counsel testified at the hearing. Regarding one Hispanic panelist, he testified regarding several race-neutral factors in striking her including her age, occupation, demeanor, and gender. He then testified as follows:

> She was pretty low on my cut list, but frankly I felt like Mrs. Hinojosa was not going to be a real strong dominating juror in there but, again, as far as her being a Hispanic, you know, I don't think that—

---

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

you know, that wasn't anymore significant than the other factors that I've listed, that is, her occupation, her age, the—what else did I just say? Oh, and sex, the dreaded "sex" word.

\*     \*     \*     \*     \*     \*

I don't think there's anything other than the things that I've just mentioned. I think I've pretty well gone through my thought process with you, and I won't deny that her being a Hispanic was a factor in my decision to be excluded or put her on my cut list.

The court found no purposeful discrimination in ACC's strikes.

The case proceeded to trial. The jury, by an 11–1 verdict, found no gross negligence by ACC. Both Hispanic jurors found no gross negligence.

In *Batson*, the Supreme Court held that the federal constitution's equal protection clause bars the exclusion of jurors "solely on account of their race." *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). The Supreme Court later held that the same clause bars exclusion of jurors in civil cases where "race is the sole reason for denying the excluded venireperson the honor and privilege of participating in our system of justice." *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 619, 111 S.Ct. 2077, 2082, 114 L.Ed.2d 660 (1991).

The same procedures apply to *Batson* complaints in the civil context that apply in a criminal context. *Edmonson*, 500 U.S. at 629–33, 111 S.Ct. at 2088–89. The complaining party must show a prima facie case of discrimination. *Edmonson*, 500 U.S. at 629–33, 111 S.Ct. at 2088–89. *Lott v. City of Fort Worth*, 840 S.W.2d 146, 150 (Tex.App.—Fort Worth 1992, no writ). The complainant can carry this initial burden by showing that she was from a cognizable racial group, that the opposing party used peremptory strikes against persons of a minority group, and that these facts and other circumstances raise an inference that the opposing counsel excluded venirepersons because of their race. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1722; *see also Lott*, 840 S.W.2d at 150. Hispanics, though

more an ethnic than racial group, have been accorded protection from preclusion based on group status under *Batson*. *See Salazar v. State*, 795 S.W.2d 187, 193 (Tex.Crim.App. 1990). The striking of five of six venire-members of the same race as the appellant has established a prima facie case of discrimination. *Dewberry v. State*, 776 S.W.2d 589, 591 (Tex.Crim.App.1989) (citations omitted). If the opposing party has done everything it needs to do following a prima facie showing, however, we need not address the efficacy of the prima facie showing. *Lott*, 840 S.W.2d at 150.

After the complainant has made a prima facie showing, the opposing party must come forward with race-neutral explanations for the peremptory strike. *Id.* We must accept a facially neutral explanation unless a discriminatory intent is inherent in the explanation. *In the interest of A.D.E.*, 880 S.W.2d 241, 243 (Tex.App.—Corpus Christi 1994, no writ) (citations omitted). The burden then shifts back to the complainant to prove by a preponderance of the evidence that the opposition's explanations are mere pretext for discrimination. *Salazar v. State*, 818 S.W.2d 405, 409 (Tex.Crim.App.1991). The court then determines whether there was a racially motivated strike. *Lott*, 840 S.W.2d at 150.

We and the Texas Supreme Court have gone a step further than some other jurisdictions. Though the cases cited above and others find unacceptable discrimination only where race was the sole reason for the strike, we and the supreme court have reversed cases where race is only one factor. *Powers v. Palacios*, 813 S.W.2d 489, 491 (Tex.1991); *McKinney v. State*, 761 S.W.2d 549, 550–51 (Tex.App.—Corpus Christi 1988, no pet.). In *McKinney*, the prosecutor stated a race-neutral basis for striking a particular juror, then admitted that "her race was not *the reason* he struck her, but that it was *a factor.*" *Id.* at 550. We held that no neutral explanation can rebut the presumption "that the condemned practice of exclusion based on race occurred when the prosecutor admits that such an exclusion did occur." *Id.* at 551.

In *Powers*, the supreme court quoted the following excerpt from the court and the counsel opposing a *Batson*–style motion:

> [The Court] The Court will ask Mr. Hall. Were you motivated by race to strike her?
>
> [Mr. Hall] Well—
>
> [The Court] I don't know how you're going to answer that.
>
> [Mr. Hall] All I can stay [sic] is not improperly but it certainly figured into it, but it was not the sole reason for striking her, no.

*Powers*, 813 S.W.2d at 490, n. 1. The supreme court held that Powers had established that opposing counsel had exercised a peremptory challenge discriminatorily. "We hold that equal protection is denied when race is a factor in counsel's exercise of a peremptory challenge to a prospective juror." *Id.* at 491 (emphasis added); *but see Hill v. State*, 827 S.W.2d 860, 869 (Tex.Crim.App.) (holding that prosecutor may consider race among other factors in making strike), *cert. denied,* —— U.S. ——, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992).[2]

■ Here, Benavides established that she was Hispanic and that ACC used all but one of its strikes against all but two of the Hispanic panel members. Even if this were insufficient as a prima facie showing of discrimination, ACC adduced testimony regarding its race-neutral reasons for the strike. We therefore must decide the correctness of the court's decision on the race-neutrality of ACC's explanation.

■ Though ACC stated many race-neutral reasons, it also stated indisputably that race was a factor in its strike of Mrs. Hinojosa. Though ACC's counsel may have considered race no more than many race-neutral factors, the admission that race was a factor in a strike renders the strike constitutionally impermissible under *Batson* and *Edmonson.* The court abused its discretion by denying Benavides's motion to disallow at least the peremptory strike of Mrs. Hinojosa. The exclusion of even one member of a racially diverse venire for racial reasons violates constitutional protections of equal protection and due process. *See Whitsey v. State*, 796 S.W.2d 707, 716 (Tex.Crim.App.1989); *Lott*, 840 S.W.2d at 153. Such exclusion invalidates the entire jury selection process and mandates reversal for new trial. *Whitsey*, 796 S.W.2d at 716; *Lott*, 840 S.W.2d at 153. We sustain point of error one.

We reverse and remand for new trial.

---

2. We do not follow the Court of Criminal Appeals in a civil case where the Texas Supreme Court has also written on the identical issue.

The Court of Criminal Appeals was badly divided in the *Hill* case. Judge Maloney wrote the opinion of the court; he was joined by three other judges. Judge Miller concurred in the result. The remaining four judges formed a separate concurrence.

The plurality wrote that "[t]he fact that the prosecutor mentioned race as part of his explanation for his peremptory challenge to establish an identity [between the juror and the defendant] which is not present is indicative of purposeful discrimination in this case, but it is not conclusive." *Hill*, 827 S.W.2d at 869. The plurality then examined the non-racial bases for the strike mentioned by the State. They reversed, holding that the defendant had carried his burden of showing that these non-racial factors were mere pretext for racial discrimination. *Id.* at 870.

Judge Baird, joined by three other judges (including Judge Benavides, the author of our opinion in *McKinney*), concurred in the result. His concurrence, however, would have ended the review once the State admitted that race was a factor in its strike. *Id.* at 875 (Baird, J., concurring). His concurrence advocates a bright-line test, opining that

equal protection is denied whenever race is a factor in the exercise of a peremptory challenge. This "bright line" rule is necessary because one simply cannot articulate a "race-neutral" explanation for exercising a peremptory strike when race is a part of that explanation.

*Id.* at 875.

The concurrence is in line with the Texas Supreme Court's opinion. *Hill*, 827 S.W.2d at 874–75 (Baird, J., concurring, quoting *Powers*, 813 S.W.2d at 491.). We must follow *Powers* in this civil case.