Diana MAYR, individually, and as next friend for Jbrandon Douglas Mayr, and Richard Eric Mayr, II, Minor Children, Appellants,

v.

Jennifer LOTT, et al., Appellees.

No. 10–96–166–CV.

Court of Appeals of Texas, Waco.

April 23, 1997.

554

Matthew E. Johnson, Jim Meyer & Associates, P.C., Waco, for appellants.

Keith Dorsett & Kara E. Felber, Fulbright, Winniford, Bice & Marable, Waco, for appellees.

Before CUMMINGS and VANCE, JJ., and McDONALD (Retired), C.J.

## OPINION

VANCE, Justice (Retired).

Diana Mayr, Jbrandon Mayr, and Richard Mayr sued Jennifer Lott for damages arising from an automobile collision. The jury found in favor of the Mayrs awarding them damages for their medical expenses. The Mayrs appeal arguing in a single point of error that the trial court erred when it overruled their *Batson* challenge. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We will affirm.

### CIVIL *BATSON* CHALLENGES

■ The Mayrs contend that Lott exercised her peremptory challenges in a discriminatory manner by striking two of the four black veniremembers on a panel of fifteen considered in selecting a jury of six. Exercising a peremptory challenge based on a juror's race is an unconstitutional violation of the juror's equal protection rights regardless of whether the proceeding is a criminal prosecution or a civil lawsuit. *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 629–30, 111 S.Ct. 2077, 2087–88, 114 L.Ed.2d 660 (1991); *Powers v. Palacios,* 813 S.W.2d 489, 491 (Tex.1991). The United States Supreme Court in *Edmonson* not only extended the principles in *Batson* to the civil context but also adopted the procedures enumerated in Batson. *Edmonson,* 500 U.S. at 631, 111 S.Ct. at 2088–89 (following *Batson,* 476 U.S. at 96–97, 106 S.Ct. at 1722–23). Although the Texas Supreme Court has not specifically adopted the *Batson* procedures for civil proceedings, several courts of appeals have applied those *Batson* procedures in civil cases and have looked for guidance to criminal-law decisions when dealing with *Batson* issues. *See Holiday Inns, Inc. v. Texas,* 931 S.W.2d 614, 624 (Tex.App.—Amarillo 1996, writ denied); *Dominguez v. State Farm Ins. Co.,* 905 S.W.2d 713, 716 (Tex.App.—El Paso 1995, writ dism. by agr.); *Benavides v. American Chrome & Chemicals, Inc.,* 893 S.W.2d 624, 626 (Tex.App.—Corpus Christi 1994), *writ denied,* 907 S.W.2d 516 (1995); *Lott v. City of Fort Worth,* 840 S.W.2d 146, 149 (Tex.App.—Fort Worth 1992, no writ).

■ When asserting a *Batson* challenge, the complaining party must make a prima facie showing that the striking party exercised a peremptory strike in a discriminatory manner. *Purkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834, 839 (1995); *Benavides,* 893 S.W.2d at 626; *Lott,* 840 S.W.2d at 150. If the complaining party establishes a prima facie case of discrimination, then a rebuttable presumption arises that the peremptory strike was racially motivated. *Holiday Inns,* 931 S.W.2d at 624; *Dominguez,* 905 S.W.2d at 715; *Lott,* 840 S.W.2d at 150. To rebut this presumption, the striking party must present a race-neutral explanation for the strike. *Purkett,* 514 U.S. at 767, 115 S.Ct. at 1770. The court is required to accept this facially neutral explanation unless a discriminatory intent is inherent in the explanation. *Id.* at 768, 115 S.Ct. at 1771; *Benavides,* 893 S.W.2d at 626. Once the striking party gives a race-neutral explanation for the strike, the burden shifts to the complaining party to show by a pre-

ponderance of the evidence that the explanation is a sham or pretext. *Benavides,* 893 S.W.2d at 626; *Lott,* 840 S.W.2d at 150. The court must then decide whether the peremptory challenge was racially motivated. *Id.*

■ On appeal, we will not disturb a trial court's finding that peremptory strikes were not racially motivated unless the finding is "clearly erroneous." *Whitsey v. State,* 796 S.W.2d 707, 726 (Tex.Crim.App.1989) (on rehearing). In determining whether the trial court's decision is "clearly erroneous," we must review the record in the light most favorable to the trial court's ruling and decide if we are left with a firm and definite conviction that a mistake has been made. *Hill v. State,* 827 S.W.2d 860, 865 (Tex.Crim. App.1992). Striking even one juror with a peremptory challenge for racial reasons invalidates the entire jury selection process. *Dominguez,* 905 S.W.2d at 717 (citing *Whitsey,* 796 S.W.2d at 716); *Young v. State,* 848 S.W.2d 203, 205 (Tex.App.—Dallas 1992), *pet. ref'd,* 856 S.W.2d 175 (Tex.Cr.App.1993).

### ANALYSIS

■ We first determine if a prima facie showing was made. After the Mayrs asserted a *Batson* challenge, the court held a hearing to determine whether Lott exercised her peremptory challenges in a discriminatory manner. Although the court did not specifically rule on whether the Mayrs established a prima facie case of discrimination, the court impliedly found a prima facie case by holding a *Batson* hearing. Because Lott did not object to the hearing or obtain a ruling, the issue of whether a prima facie case was established is waived and we need not review the finding. *Dominguez,* 905 S.W.2d at 716.

■ Next, we consider whether Lott met her burden of producing a race-neutral explanation for her strikes against veniremembers three and nine. A race-neutral explanation is "one based on something other than the race of the juror." *Chambers v. State,* 866 S.W.2d 9, 24 n. 16 (Tex.Crim.App. 1993), *cert. denied,* 511 U.S. 1100, 114 S.Ct.

1871, 128 L.Ed.2d 491 (1994). "'At this step of the inquiry, the issue is the facial validity of the [striking party's] explanation. Unless a discriminatory intent is inherent in the [striking party's] explanation, the reason offered will be deemed race neutral.'" *Id.* (quoting *Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991)). Furthermore, those explanations must also be "clear and reasonably specific" and must contain "legitimate reasons." *Williams v. State,* 804 S.W.2d 95, 106 (Tex.Crim.App.1991); *see also Dominguez,* 905 S.W.2d at 717. "[S]uch explanation, while not necessarily rising to the level of a challenge for cause, must articulate a neutral explanation reasonably related to the issues being tried." *Dominguez,* 905 S.W.2d at 716.

■ Lott explained that she struck veniremember three because she had undergone chiropractic treatment.[1] Not only is this explanation clear and specific, but it is reasonably related to the issues being tried. One of the issues in this case dealt with whether the Mayrs' medical expenses, which included chiropractic treatment, were reasonable; thus, Lott's asking the jurors whether they had undergone such treatment is facially race-neutral. *See Chambers,* 866 S.W.2d at 24 n. 16; *Benavides,* 893 S.W.2d at 626. As to veniremember nine, Lott responded that she struck that juror because she responded too eagerly to the Mayrs' questions and her large gold hat indicated her flamboyant character. Responding too eagerly does not rebut the presumption of discrimination because nothing in the record indicates that veniremember nine was too eager in her responses. *See Dominguez,* 905 S.W.2d at 717 (citing *Roberson v. State,* 866 S.W.2d 259, 261 (Tex.App.—Fort Worth 1993, no pet.), for the proposition that the "basis [for the race-neutral explanation] must be substantiated by something other than the [striking party's] statement and that something must be on the record"). Nevertheless, Lott presented a second independent rationale for striking veniremember nine: her large gold hat. Removing veniremembers because of

---

1. The record shows that the court did not place the attorneys under oath, but because there was no objection to this, we will treat the attorneys'

responses in the *Batson* hearing as evidence. *See Lott v. City of Fort Worth,* 840 S.W.2d 146, 150 (Tex.App.—Fort Worth 1992, no writ).

their appearance is a sufficient race-neutral explanation. *See Purkett,* 514 U.S. at 769, 115 S.Ct. at 1771 (striking a juror because of his long, unkept hair, a mustache, and beard was a sufficiently race-neutral explanation); *Alexander v. State,* 866 S.W.2d 1, 8–9 (Tex. Crim.App.1993) (striking a juror for wearing sunglasses during voir dire); *Gerber v. State,* 845 S.W.2d 460, 464–65 (Tex.App.—Houston [1st. Dist.] 1993, pet. ref'd) (striking a juror for wearing sunglasses constituted a race-neutral explanation); *Hernandez v. State,* 808 S.W.2d 536, 544 (Tex.App.—Waco 1991, no pet.) (wearing "only a T-shirt" was a race-neutral explanation.); *Davis v. State,* 796 S.W.2d 813, 819 (Tex.App.—Dallas 1990, pet. ref'd) (exercising a peremptory challenge because of a juror's appearance and demeanor was a valid race-neutral explanation). Although Lott's first reason may be suspect, the second reason is sufficiently race-neutral to meet Lott's burden. *Green v. State,* 839 S.W.2d 935, 939 (Tex.App.—Waco 1992, pet. ref'd). Having offered an explanation void of any racially discriminatory intent on its face, Lott met her burden of articulating a race-neutral explanation for the use of a peremptory strike against veniremembers three and nine.

 The burden then shifted to the Mayrs to establish purposeful racial discrimination by showing that the explanations were merely a sham or pretext for discrimination. *Williams,* 804 S.W.2d at 101–02. In evaluating whether a striking party's race-neutral explanation is a sham or pretext, the court may utilize the following factors:

1. The reasons given are not related to the facts of the case.
2. There was a lack of questioning to the challenged juror, or a lack of meaningful questions.
3. Disparate treatment—persons with the same or similar characteristics as the challenged juror were not struck.
4. Disparate examination of members of the venire; e.g., a question designed to provoke a certain response that is likely to disqualify the juror and was asked only to minority jurors.
5. Any explanation based on a group bias where the group trait is not shown to

apply to the challenged juror specifically.

*See Williams,* 804 S.W.2d at 105–06; *Keeton v. State,* 749 S.W.2d 861, 868 (Tex.Crim.App. 1988); *Lott,* 840 S.W.2d at 151. In order to meet the burden of proving that the striking party exercised its peremptory challenges in a discriminatory manner, the complaining party may employ a comparative analysis of minority and non-minority jurors to show disparate treatment. *See Ramirez v. State,* 862 S.W.2d 648, 652 (Tex.App.—Dallas 1993, no pet.); *Young,* 848 S.W.2d at 205–06.

Utilizing a comparative analysis approach, the defendant in *Young v. State* argued that the prosecutor's striking a black juror who was related to a person charged with a crime but not a white juror with the same characteristic showed disparate treatment. *Young,* 848 S.W.2d at 209. The Dallas Court of Appeals agreed. *Id.* The court determined that al though striking a juror who is related to a person charge with a crime is a valid race-neutral explanation, the explanation was a pretext. *Id.* Both jurors gave similar answers to the prosecutor's questions about their relatives being charged with a crime. *Id.* Consequently, the court held that the only difference between the prospective jurors was that one was black and the other was white. *Id.* Based on these facts, the court found that it was left with a definite and firm conviction that the trial court made a mistake in overruling the defendant's *Batson* objection because the facts showed a disparate treatment of these prospective jurors on a racial basis. *Id.*

The Mayrs argue that Lott's striking of veniremember three shows disparate treatment because veniremember twelve had the same characteristic as number three, was white, and was not struck. They contend that because both veniremembers had undergone chiropractic treatment, the only significant difference between the two was that number three was a black female and number twelve was a white female. Based on *Young,* we agree. *Id.*

During Lott's voir dire, she asked if anyone had ever received chiropractic treatment. Veniremembers three, eight, and

twelve stated that they had. Lott did not ask any further questions of these jurors. After voir dire, she struck number three, a black female. At the *Batson* hearing, the Mayrs argued that Lott's exercise of her peremptory strikes was racially motivated. Lott responded that she struck number three because she had undergone chiropractic treatment. The Mayrs, however, pointed out that numbers eight and twelve also had chiropractic treatment. Lott answered that she did not strike number eight because he was a business owner and that she did not strike number twelve "because my three strikes had been used up and I couldn't reach her."

Citing *Green*, Lott asserts that although she failed to strike a juror with the same characteristic as the stricken juror, this action did not require automatic reversal. *Green*, 839 S.W.2d at 939. In *Green*, the State offered two reasons for striking a black juror. *Id.* It stated that it struck that juror because she had reservations about punishment and a strong personality. *Id.* The defendant pointed out that another non-minority juror had also expressed reservations about punishment. *Id.* We held that although the first reason is suspect because the State failed to strike a white juror with the same characteristic, the State's second independent reason stood "untainted as a basis for the strike;" thus, the court's finding was not clearly erroneous. *Id.*

That is not the case here. Lott had a choice between striking a black juror who had undergone chiropractic treatment and a white juror with the same characteristic. Her only explanation for this apparently disparate treatment of prospective jurors was that she ran out of strikes. This explanation does not, however, remove the taint of striking a black juror who shared the same characteristic as a white juror. Her explanation only highlights the fact that she had a choice between two similarly situated people and chose to strike the one who is black. Furthermore, we note that Lott failed to develop a record to establish any "qualitative difference" between the two jurors. *See Ramirez*, 862 S.W.2d at 653. If we stopped here, we would find discrimination in the jury selection process, reverse the judgment, and remand for another trial.

■ However, we must determine whether we are left with a definite and firm conviction that a mistake was made when the *trial court* overruled the *Batson* challenge. *Hill*, 827 S.W.2d at 865. The record shows that the impaneled jury included two black females. Additionally, the positions of the respective jurors on the panel lends some support to Lott's reason for choosing to strike the minority juror, who was number three instead of the white juror, who was number twelve. For these reasons, considering the entire record in the light most favorable to the court's ruling, we cannot say that the ruling was clearly erroneous. *Id.*

We overrule the Mayrs' point of error and affirm the judgment.