Kelvin EALOMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–97–179–CR

Court of Appeals of Texas,
Waco.

Dec. 16, 1998.

Walter M. Reaves, Jr., West, for appellant.

John W. Segrest, Crim. Dist. Atty., Laura M. Alaniz, Asst. Crim. Dist. Atty., Waco, for appellee.

Before Chief Justice DAVIS, Justice CUMMINGS, and Justice VANCE.

## O P I N I O N

VANCE, Justice.

A jury found Kelvin Ealoms guilty of aggravated assault and assessed punishment at sixty years in prison. He appeals, asserting that there are three bases for remanding this cause for a new trial:

- The court erred in overruling his objection to the State's exercise of peremptory challenges in violation of *Batson v. Kentucky;* [1]
- The court erred in quashing a subpoena *duces tecum* directed at obtaining the personnel records of Officer Chris Doles, the alleged victim; and
- Section 143.089 of the Government Code unconstitutionally limited his ability to discover relevant and material information.

We will affirm the judgment.

### FACTS

Officers Chris Doles and Jessie Boleman witnessed Ealoms driving erratically. Believing that Ealoms was under the influence of alcohol, they attempted to stop him. Ealoms pulled his car along the curb, but took off as soon as Doles exited the police car. Doles and Boleman followed Ealoms until he pulled over again. As Doles approached Ealoms' car a second time, Ealoms began driving in reverse. Concerned for his safety, Doles pulled his gun and approached the driver's side door. He held the gun to Ealoms' head and reached into the car to take the keys out of the ignition. At that point, Ealoms hit the accelerator, dragging Doles down the street. Eventually, Ealoms ran over Doles. Both Ealoms and Doles were taken to the hospital, treated, and released.

Ealoms was charged with aggravated assault to which he pled not guilty.

### *BATSON* CHALLENGE

Ealoms' first issue complains that the State used its peremptory strikes in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Equal Protection Clause of the United States Constitution prohibits the discriminatory use of peremptory challenges due to race. *Id.* at 96, 106 S.Ct. at 1723. To successfully challenge the use of a peremptory strike on the basis of race, a defendant must make a prima

---

1. 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69    (1986).

facie showing that the strike was used solely because of the juror's race. *Id.* at 97, 106 S.Ct. at 1723; *Tennard v. State*, 802 S.W.2d 678, 680 (Tex.Crim.App.1990). The burden then shifts to the State to come forward with a racially-neutral explanation for challenging the juror. *Chambers v. State*, 866 S.W.2d 9, 23 (Tex.Crim.App.1993); *see also* TEX.CODE CRIM. PROC. ANN. art. 35.261(a) (Vernon 1989). Once the State gives a race-neutral explanation for the strike, the burden shifts back to the defendant to show that the explanation is a sham or pretext. *Pondexter v. State*, 942 S.W.2d 577, 581 (Tex.Crim.App. 1996); *Mayr v. Lott*, 943 S.W.2d 553, 556 (Tex.App.—Waco 1997, no writ). Ultimately, the burden is on the accused to persuade the trial judge that the allegations of prejudice are true. *Earhart v. State*, 823 S.W.2d 607, 624 (Tex.Crim.App.1991); *Tompkins v. State*, 774 S.W.2d 195, 202 (Tex.Crim.App.1987), *aff'd per curiam*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989).

■ On appeal, a trial court's ruling on a *Batson* objection will not be reversed unless clearly erroneous. *See Stiles v. State*, 927 S.W.2d 723, 727 (Tex.App.—Waco 1996, no pet.); *see also Mayr*, 943 S.W.2d at 556. Ealoms argues that the State's peremptory strikes must have been racially motivated because the State failed to strike other members of the venire who shared similar characteristics with the black persons struck. We will review the reasons given for striking each of the three black venire members.

#### 1) Collus Williams

The State explained that a peremptory strike was used to remove Williams from the panel because of his appearance (he was wearing a jacket which read "Bad Boys Club," he was wearing a pink hat which the bailiff had to ask him to remove, he was wearing a snake skin belt, and he chewed gum throughout voir dire), his confused responses to the prosecutor's questions concerning resisting arrest, and his failure to

complete the juror questionnaire. The prosecutor further supported his strike with the fact that Williams did not reveal his arrest record in response to questions asked by the prosecutor.[2]

■ Removing venire members because of their appearance is a valid, race-neutral reason. *See Purkett v. Elem*, 514 U.S. 765, 768–69, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (unkept hair, mustache, and beard is a sufficiently race-neutral reason); *Alexander v. State*, 866 S.W.2d 1, 8–9 (Tex.Crim.App. 1993) (wearing sunglasses is a sufficiently race-neutral reason); *Hernandez v. State*, 808 S.W.2d 536, 544 (Tex.App.—Waco 1991, no pet.) (wearing a T-shirt is a sufficiently race-neutral reason). Likewise, failure to complete the juror questionnaire is a valid reason to strike a venire member. *Satterwhite v. State*, 858 S.W.2d 412, 423 (Tex. Crim.App.1993). Finally, the fact that a potential juror has had a family member formally accused of a crime is a sufficiently valid reason to strike that juror. *Stiles v. State*, 927 S.W.2d at 727; *Harris v. State*, 827 S.W.2d 949, 955 (Tex.Crim.App.1992). And, failure to reveal that accusation is a valid reason to strike the potential juror. *See Holman v. State*, 772 S.W.2d 530, 533 (Tex.App.—Beaumont 1989, no pet.).[3]

#### 2) Adolfus Barns

■ The State's explanations for striking Barns included his youth, his employment, his failure to complete the juror questionnaire and to reveal his arrest record, and his belief that an officer should not be able to "pull a gun" during a traffic stop. We have already determined that an incomplete questionnaire and the failure to reveal an arrest record are sufficiently neutral reasons for exercising a peremptory strike. Additionally, youth and employment (or lack thereof) are acceptable race-neutral explanations for

---

**2.** The prosecutor also stated that two of the challenged jurors "warmed up" to the defense. Ealoms complains that this is a subjective determination which deserves little weight. Although this can be a proper basis for a strike (*see Yarborough v. State*, 947 S.W.2d 892, 895–96 (Tex.Crim. App.1997)), we do not rely on it.

**3.** It follows that if the failure to reveal a family member's arrest record is a sufficiently race-neutral reason to strike a potential juror, then failure to reveal his own record would be likewise.

striking a prospective juror. *Lee v. State,* 949 S.W.2d 848, 851 (Tex.App.—Austin 1997, pet. ref'd); *Roy v. State,* 891 S.W.2d 315, 325 (Tex.App.—Fort Worth 1994, no pet.); *Davis v. State,* 822 S.W.2d 207, 211 (Tex.App.—Dallas 1991, pet. ref'd); *York v. State,* 764 S.W.2d 328, 331 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). Further, because the officer in this case pulled his gun during the traffic stop, the fact that Barns thought this was improper was a race-neutral reason for the strike.

### 3) Stevie Hearon

■■■ The State's reasons for striking Hearon were that he wore a gold earring, worked as a car detailer, and possibly had been involved in a car accident while under the influence of alcohol. Also, like both other jurors, Hearon failed to reveal his arrest record. We previously acknowledged that appearance is a proper basis for exercising a strike, as is occupation and failure to reveal an arrest record.

■■■ Because the State gave several race-neutral reasons for striking each of the challenged venire members, the burden shifted back to Ealoms to establish that the explanations were merely a sham or pretext for discrimination. *Pondexter,* 942 S.W.2d at 581. One way to rebut the explanation is to establish disparate treatment of similar jurors, or to show that the reasons given do not relate to the facts of the case. *Cantu v. State,* 842 S.W.2d 667, 688 (Tex.Crim.App. 1992); *Williams v. State,* 804 S.W.2d 95, 105–06 (Tex.Crim.App.1991). However, racial discrimination does not necessarily exist in every situation where one of the State's bases for striking a venire person would technically apply to another venire person whom the State found acceptable. *Lee,* 949 S.W.2d at 850 (citing *Cantu,* 842 S.W.2d at 689). Nor must the characteristics a prosecutor finds offensive in a juror relate to the exact subject matter of the case. *Id.* at 851 (citing *Purkett,* 514 U.S. at 768–69, 115 S.Ct. at 1771–72). When more than one reason for the strike is given, those reasons should be evaluated together, considering the interaction of the potential juror's characteristics. *Cantu,* 842 S.W.2d at 688. Although Ealoms argues that "all the factors relied on by the state were possessed by other jurors who were not struck," the record does not support his assertion. Ealoms fails to identify any other juror with all of the characteristics for which any of the challenged jurors were struck. Although one may have had a similar job and another may have revealed similar feelings regarding an officer's use of a weapon during a traffic stop, none possessed the same combination of characteristics as any of the challenged jurors.

After viewing the evidence from the *Batson* hearing in the light most favorable to the trial court's ruling, we conclude that the trial court's decision to overrule Ealoms' *Batson* objection was not clearly erroneous. *See Stiles,* 927 S.W.2d at 727. Despite Ealoms' assertion that race was the only distinguishing factor among the challenged jurors versus those left on the panel, we believe the prosecutor's race-neutral explanations support the trial court's ruling. Issue one is overruled.

## SECTION 143.089, LOCAL GOVERNMENT CODE

### SUBPOENA *DUCES TECUM*

Ealoms' second and third issues complain that the court erred in quashing a subpoena directed at obtaining Doles' personnel records from the Police Department or, alternatively, that section 143.089 of the Local Government Code unconstitutionally infringes on his due process rights.

Prior to trial, Ealoms obtained a subpoena *duces tecum* directed to the Waco Police Department. The city of Waco filed a motion to quash the subpoena, arguing that only substantiated complaints of misconduct resulting in disciplinary action are subject to disclosure under section 143.089 of the Local Government Code. *See* TEX. LOC. GOV'T.CODE ANN. § 143.089 (Vernon Supp 1998). The court reviewed the records *in camera,* found no substantiated reports, and quashed the subpoena.

Ealoms claims that his actions at the scene of the offense were in self defense against Doles' use of excessive force. As such, he

858

argues, he had the right to present whatever evidence he had to establish that the victim was the "first aggressor." *Lowe v. State,* 612 S.W.2d 579, 580 (Tex.Crim.App.1981); *Thompson v. State,* 659 S.W.2d 649, 654 (Tex. Crim.App.1983). He asserts that, if Doles' personnel records contain any allegations of prior misconduct, this evidence was relevant to his defense. The State contends, however, that relevancy is not the issue. Rather, the State argues, because the information is confidential and privileged under the statute, Ealoms was not entitled to it.

This issue can only be resolved after examining section 143.089. This section is part of the law governing municipal civil service. It states, in pertinent part:

(a) The [civil service] director or the director's designee shall maintain a personnel file on each fire fighter and police officer. The personnel file must contain any letter, memorandum, or document relating to:

. . .

(2) any misconduct by the fire fighter or police officer if the letter, memorandum, or document is from the employing department and if the misconduct resulted in disciplinary action by the employing department in accordance with this chapter;

. . .

(b) A letter, memorandum, or document relating to alleged misconduct by the fire fighter or police officer may not be placed in the person's personnel file if the employing department determines that there is insufficient evidence to sustain the charge of misconduct.

. . .

(f) The director or the director's designee may not release any information contained in a fire fighter's or police officer's personnel file without first obtaining the person's written permission, *unless the release of the information is required by law.*

(g) A fire or police department may maintain a personnel file on a fire fighter or police officer employed by the department for the department's use, but the department may not release any information contained in the department file to any agency or person requesting information relating to a fire fighter or police officer. The department shall refer to the director or the director's designee a person or agency that requests information that is maintained in the fire fighter's or police officer's personnel file.

Tex. Loc. Gov't.Code Ann. § 143.089 (emphasis added).

Two different files are contemplated by this section—one mandated and one discretionary. The statute mandates that the civil service director maintain a personnel file for each employee containing substantiated claims of misconduct to be disclosed only with consent or "as required by law." This is not an issue because Ealoms did not subpoena the file maintained by the civil service director.

Subsection (g), however, allows the police department to maintain a separate file *for the department's use,* and Ealoms directed his subpoena to the police department directly. Statutorily, the files maintained under subsection (g) are not subject to disclosure. *Id.* ("but the department may not release any information contained in the department file"); *see also City of San Antonio v. Texas Atty. Gen.,* 851 S.W.2d 946, 948 (Tex.App.— Austin 1993, writ denied). Anyone requesting the information contained within a file maintained under subsection (g) must be referred to the civil service director. *Id.*

The Austin Court of Appeals has reviewed section 143.089 in relation to the Open Records Act. Recognizing that records which are "deemed confidential" are not subject to compelled disclosure under the Act, the Court rationalized that if files kept under subsection (g) were intended to be confidential, then there was no duty to disclose them. *City of San Antonio,* 851 S.W.2d at 949. The Court concluded that subsection (g) "forbids" the release of information maintained under that subsection to anyone under any circumstances. *Id.* at 952. This, however, does not control our review. The Austin decision is

distinguishable from this case because one's right to review information under the Open Records Act is not as compelling as a defendant's right to material evidence in a criminal proceeding.

■ It is settled that a defendant's due process rights are violated if he does not obtain, upon request, evidence in the State's possession favorable to him "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[4] *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). *"Brady* evidence" includes impeachment evidence as well as exculpatory evidence. *See United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985) (citing *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972)).[5] Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995); *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *Ex parte Kimes*, 872 S.W.2d 700, 702–03 (Tex.Crim.App.1993) (citing *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383).

■ This is not to say, however, that a defendant's due process right to have the State disclose favorable evidence creates a constitutional right to discovery. *Martin v. Darnell*, 960 S.W.2d 838, 842 (Tex.App.— Amarillo 1997, orig. proceeding) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977)). A defendant in a criminal case does not have a general right to discovery of evidence in possession of the State, and a subpoena *duces tecum* is not to be used as a discovery weapon, but as an aid to discovery based upon a showing of materiality and relevance. *Kinnamon v. State*, 791 S.W.2d 84, 91 (Tex.Crim. App.1990); *Cruz v. State*, 838 S.W.2d 682, 686 (Tex.App.—Houston [14th Dist.] 1992, no pet.). Here, there is no question that the file requested by Ealoms is privileged by statute. Thus, in determining Ealoms' right to the privileged material, the court was obligated to conduct an *in camera* review of the evidence.[6] *Id.* (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 59–60, 107 S.Ct. 989, 1002–03, 94 L.Ed.2d 40 (1987)); *see also Yates v. State*, 941 S.W.2d 357, 364 (Tex.App.—Waco 1997, pet. ref'd) (*in camera* inspection of potential *Brady* material is proper).

In *Thomas v. State*, 837 S.W.2d 106 (Tex. Crim.App.1992), the appellant was denied access to a recording from a local "crime stoppers" program because of a statute which deemed such records confidential. On appeal, the Court of Criminal Appeals considered whether the failure to allow access to the records violated Thomas' Sixth and Fourteenth Amendment rights. The Court held that denial of discovery, either during or before trial, *could* violate a defendant's due process rights. *Id.* at 111–12. Thus, the court held, the trial court's application of the

---

**4.** The United States Supreme Court determined in *Pennsylvania v. Ritchie* that claims of this sort are properly considered under the Fourteenth Amendment (addressing the fundamental fairness of trial) rather than delving into the rights afforded by the Compulsory Process Clause of the Sixth Amendment. 480 U.S. 39, 56, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987).

**5.** *Kyles* further extended *Brady* to include disclosure of any favorable information in the possession of police agencies and other parts of the "prosecutorial team." *Kyles v. Whitley*, 514 U.S. 419, 437–40, 115 S.Ct. 1555, 1567–69, 131 L.Ed.2d 490 (1995).

**6.** A defendant does not have a constitutional right to conduct his own search of the files to argue relevance. *Ritchie*, 480 U.S. at 59–60, 107 S.Ct. at 1002. However, although the defendant continues to bear the burden of showing materiality, the burden under *Brady* is not the same as that for a defendant attempting to compel the testimony of a witness. This would be an impossible burden, considering the defendant has not seen the contents of the file. So, the burden rests on the trial court to determine, upon request, whether or not a file or document in the State's possession contains *Brady* evidence by conducting an *in camera* inspection of the requested information. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963).

confidentiality statute to totally bar Thomas' access to the information violated his due process rights. *Id.* at 113. Instead, the court should have conducted an *in camera* review of the information to protect Thomas' rights. The trial court is under a continuing obligation to determine if the produced information contains *Brady* evidence which should be revealed to the defendant. *Id.* The Court recognized that *"Brady* evidence" includes evidence which is exculpatory (by its nature, material) and impeachment evidence that is material. *See id.* at 114.

 It is undisputed that the trial court followed this procedure and conducted an *in camera* review purporting to search for *Brady* evidence.[7] It is Ealoms position, however, that the court failed to use the proper test for determining whether he had a right to disclosure of the evidence. In refusing to disclose the information, the court stated:

> All right. I want the record to reflect that I have been delivered the material that has been subpoenaed by the Assistant City Attorney, Ms. Jones. I have independently examined that material. I cannot find any material that I believe is material to the issues involved in this case. I find that the only matters in it were not sustained by the—in the internal investigations.

Apparently, the court determined that evidence of misconduct would be subject to disclosure only if substantiated through an internal affairs investigation. This is incorrect. We have independently reviewed the file *in camera* and believe that it contains evidence which might have been used to impeach Doles. We also believe that this evidence, when viewed at the time of the hearing, was favorable to Ealoms' claim of self defense. Thus, we now consider whether,

under *Brady,* there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Kyles,* 514 U.S. at 434, 115 S.Ct. at 1566; *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383; *Thomas,* 841 S.W.2d at 404.

We have reviewed the entire record. Although Ealoms should have been made aware of the favorable information contained within the file, we cannot say that the evidence is such as to undermine confidence in the outcome of the trial. *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383; *Kimes,* 872 S.W.2d at 702–03. Issues two and three are overruled.

The judgment is affirmed.

---

7. Ealoms challenges the constitutionality of section 143.089 "insofar as it limits the ability of a criminal defendant to discover information which is relevant and material to his defense." Because we have clarified a procedure which, if followed, would ensure the protection of a criminal defendant's right to review information maintained under this statute, this challenge must fail. We do not, however, address whether a statute which purports to prevent disclosure in all circumstances, including criminal prosecutions, would be exempt from an *in camera* review. *See Ritchie,* 480 U.S. at 57–58, 107 S.Ct. at 1001–02.