**Stanley GRAFF, Appellant,**

v.

**M.D. WHITTLE and Vernon Berry, Appellees.**

No. 06–96–00056–CV.

Court of Appeals of Texas, Texarkana.

Submitted March 11, 1997.

Decided May 22, 1997.

Rehearing Overruled June 17, 1997.

---

**632**

Donald H. Flanary, Jr., Vial, Hamilton, Koch, Knox, Dallas, for appellant.

James R. Rodgers, Moore, Payne, Clem, Rodgers, Paris, for appellees.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

This is a case involving an alleged public road or easement across Stanley Graff's property. Graff appeals from a declaratory judgment in favor of M.D. Whittle and Vernon Berry. In its judgment, the trial court held that (1) the road is a public road and (2) Whittle and Berry have an easement in the road. In twenty-six points of error, Graff raises a *Batson*[1] challenge, challenges both holdings, raises evidentiary errors, and challenges the jury's negative finding on his counterclaim for damages.

Graff purchased the property in 1981. He contends that in 1983 and 1984 he built a new road from the entrance gate to the corner of the property of M.D. Whittle. Whittle and Berry contend that Graff merely improved an already existing road. Whittle used the road in logging his and Berry's land. When Graff told Whittle not to use the road, Whittle and Berry obtained an injunction against Graff. Graff countersued for damages and declaratory judgment. Whittle and Berry then amended their petition and also requested declaratory relief. The case was tried to a jury, and based on the verdict, the trial court entered judgment for Whittle and Berry. Graff appeals the declaratory judgment in favor of Whittle and Berry.

■ After voir dire, Graff's attorney filed a *Batson* motion challenging the peremptory strike exercised against Terry Eugene Jackson, a black venireman. Graff urged that absent "an affirmative showing of some reason for striking him then it is presumed as a matter of law that it was for an unconstitutional reason." Graff's point of error is that the trial court erred in failing to sustain his constitutional challenge to Whittle and Berry's strike because Whittle and Berry's counsel failed to articulate a race-neutral explanation for the strike.

■ The party challenging the strike must prove by a preponderance of the evidence that the strike was racially motivated.[2] This party has the initial burden of production to establish a prima facie case.[3]

■ Whittle and Berry contend that Graff did not establish a prima facie case of discrimination. If a striking party, however, offered explanations for its strikes without objecting to the claimant's failure to establish a prima facie case, the striking party waives that objection.[4] In the present case, Whittle

---

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. *Salazar v. State*, 818 S.W.2d 405, 409 (Tex. Crim.App.1991); *Texas Tech Univ. Health Sciences Ctr. v. Apodaca*, 876 S.W.2d 402, 406–09 (Tex.App.—El Paso 1994, writ denied).

3. *Texas Tech*, 876 S.W.2d at 406–09; *see also*, *Tennard v. State*, 802 S.W.2d 678, 680 (Tex.Crim. App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct.

2914, 115 L.Ed.2d 1077 (1991); *Bean v. State*, 816 S.W.2d 115, 117 (Tex.App.—Houston [14th Dist.] 1991, no pet.).

4. *Chambers v. State*, 866 S.W.2d 9, 23 (Tex.Crim. App.1993), *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994); *Price v. Short*, 931 S.W.2d 677, 682 (Tex.App.—Dallas 1996, n.w.h.).

and Berry waived the argument that Graff failed to establish a prima facie case of discrimination by failing to object and by going forward with their explanations.

Having waived the prima facie showing, the burden of production shifts to the opposing party to come forward with race-neutral explanations for the peremptory strike.[5] Graff contends that Whittle and Berry's attorney did not articulate a race-neutral explanation relating to the particular characteristic of the venire member struck. Whittle and Berry's attorney offered the following explanation for the strike:

> Mr. Jackson was one of the last jurors—or potential jurors that we used a peremptory challenge on. There was nothing about his responses that we used as a basis to strike; however, the responses of jurors number 27 and 28, . . . we had them rated as—well, the highest rating I give for potential jurors. So we had to use all of our six strikes to get down to 27 and 28.

When the striking party offers race-neutral explanations, the burden shifts back to the complainant to prove that the explanations are mere pretext for discrimination.[6] After a *Batson* hearing, the trial court determines whether the party gave a racially neutral explanation for each questioned strike "and, if so, whether each explanation was truly race-neutral or merely a pretext for a racially motivated strike."[7]

A court of appeals gives "[t]he trial court's decision on the ultimate question of discriminatory intent" great deference.[8] If the trial court overrules the challenge "without reducing his findings of fact and conclusions of law to writing or stating them on the record," a court of appeals infers the trial court's finding that the peremptory challenge was not based on race.[9]

In the present case, the record shows that the trial court took judicial notice that the struck juror was black and that Graff's attorney offered no other evidence to show that the race-neutral explanation of Whittle and Berry's attorney was pretextual. Nothing was shown about the rating system used by Whittle and Berry's attorney to show that it was racially motivated. Nothing was shown about the other jurors that Whittle and Berry's attorney sought to reach. Nothing was shown about the racial makeup of the jury. After the striking party offers a race-neutral explanation, the reviewing court must determine whether the challenging party has proved purposeful racial discrimination, and the appellate court should not consider whether the race-neutral explanation is persuasive or even plausible.[10] As Justice O'Connor stated in her concurring opinion in *Hernandez v. New York*,[11] "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral."[12]

The trial court included no findings of fact or conclusions of law on his *Batson* ruling; therefore, we infer that the trial court made a finding that the strike was not based on race. The explanation given by Whittle and Berry's attorney was unusual in that it had nothing to do with the struck juror, but was an explanation based solely upon an effort to reach two other favorably rated jurors. If

5. *Benavides v. American Chrome*, 893 S.W.2d 624 (Tex.App.—Corpus Christi 1994, writ denied).

6. *Camacho v. State*, 864 S.W.2d 524, 528 (Tex. Crim.App.1993); *Benavides*, 893 S.W.2d 624.

7. *Williams v. State*, 804 S.W.2d 95, 106 (Tex. Crim.App.1991), *cert. denied*, 501 U.S. 1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991); *Lott v. City of Fort Worth*, 840 S.W.2d 146 (Tex.App.—Fort Worth 1992, no writ)

8. *Hernandez v. New York*, 500 U.S. 352, 364, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395, 408–09 (1991); *Vargas v. State*, 838 S.W.2d 552, 553 (Tex.Crim.App.1992) (en banc); *Dominguez v. State Farm Ins. Co.*, 905 S.W.2d 713, 716 (Tex.

App.—El Paso 1995, writ dism'd by agr.); *In re A.D.E.*, 880 S.W.2d 241, 243–45 (Tex.App.—Corpus Christi 1994, no writ); *Lott*, 840 S.W.2d 146.

9. *Vargas*, 838 S.W.2d at 553; *Lott*, 840 S.W.2d 146.

10. *Purkett v. Elem*, 514 U.S. 765, ———, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995).

11. *Hernandez*, 500 U.S. at 360, 111 S.Ct. at 1866.

12. The cited case is a criminal case, but the same procedures apply in a civil *Batson* challenge as apply in a criminal *Batson* challenge. *Benavides*, 893 S.W.2d 624.

the record had shown that the other two jurors had been of a different race, this might be some evidence of the pretextual nature of this strike. The record in the present case, however, does not show whether the two jurors Whittle and Berry's attorney sought to reach were of the same or a different race than the juror struck.

Such incomplete data will not allow us to perform a statistical analysis or infer any racial motivation. We, therefore, must give deference to the trial judge and infer that the trial court's finding that the peremptory challenge was not based on race is correct. Having reviewed the record in its entirety in the light most favorable to the trial court's ruling, we overrule this point of error.

Graff next attacks the jury finding of a public road on the bases: (1) that as a matter of law, there was not a public road; (2) that no evidence supported the finding of a public road; (3) that no evidence supported the submission of Jury Question No. 1 asking the jury to determine whether there was a public road; and (4) that the evidence was legally and factually insufficient to support the finding of a public road.

We review a declaratory judgment under the same standards as for other judgments and decrees.[13] We view all the facts and circumstances in the light most favorable to the appellees.[14] "We look to the procedure used to resolve the issue at trial to determine the standard of review."[15] We affirm if the judgment is sustainable for any reason.[16] If

a trial court's decision is correct on any theory of law applicable to the case, we will affirm.[17]

In reviewing evidence for legal and factual sufficiency, we first must examine the record for any probative evidence to support the finding and ignore all contrary evidence.[18] If we find some probative evidence to support the finding, then we test the factual sufficiency by examining the entire record to determine whether the finding is clearly wrong and unjust.[19]

A "matter of law" challenge is raised by the party which had the burden of proof on that issue. As the defendant, Graff did not have the burden of proof on any issue except his counterclaim. We therefore treat Graff's "matter of law" challenges as "no evidence" challenges, except under point of error twenty, bringing a "matter of law" challenge regarding his counterclaim.

If an appellant raises both "no evidence" and "insufficient evidence" points, we first rule on the "no evidence" point.[20] In reviewing a "no evidence" point, we view the evidence in the light most favorable to the finding, consider only evidence supporting the finding, indulge all reasonable inferences therefrom, and disregard all contrary or conflicting evidence and inferences.[21] We will sustain a "no evidence" point only if the record contains no more than a scintilla of evidence to support the trial court's finding.[22]

In a declaratory judgment action, "the party asserting the affirmative of the controlling

---

13. TEX. CIV. PRAC. & REM.CODE ANN. § 37.010 (Vernon 1986); *Burlington N. Ry. Co. v. Southwestern Elec. Power Co.*, 925 S.W.2d 92, 98 (Tex.App.— Texarkana 1996, n.w.h.); *Truck Ins. Exch. v. Musick*, 902 S.W.2d 68, 69 (Tex.App.—Fort Worth 1995, writ denied).

14. *Puretex Lemon Juice v. California Prods.*, 324 S.W.2d 449, 453 (Tex.Civ.App.—San Antonio 1959), *aff'd*, 160 Tex. 586, 334 S.W.2d 780 (1960).

15. *City of Galveston v. Giles*, 902 S.W.2d 167, 170 (Tex.App.—Houston [1st Dist.] 1995, no writ).

16. *Trigg v. Blakemore*, 387 S.W.2d 465 (Tex.Civ. App.—Austin 1965, writ ref'd n.r.e.).

17. *Reiche v. Williams*, 143 Tex. 365, 185 S.W.2d 420 (1945).

18. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

19. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 662 (1951).

20. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981).

21. *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex. 1992).

22. *Freeman v. Texas Compensation Ins. Co.*, 603 S.W.2d 186, 191 (Tex.1980).

issues" bears the burden of proof.[23] In the present case, Whittle and Berry contended that they had a right to use the road because it was a public road and because they had an easement in the road. The judgment's effect is to give Whittle and Berry a right to use the road.

■ Whether a public road exists is a fact question.[24] The trial court's jury question asked the jury to find whether the road at issue was a public road created by express or implied dedication. The jury answered affirmatively. On appeal, Whittle and Berry take the position that the dedication was an implied dedication.

■ Graff asks this Court to take judicial notice that Red River County's population is 50,000 or less. Pursuant to Rule 201 of the Rules of Civil Evidence, we take judicial notice of the fact that Red River County's population is less than 50,000.[25]

■ Graff contends on appeal that Sections 281.001 and 281.003 of the Transportation Code,[26] effective September 1, 1995, precludes an implied dedication in this case. The predecessor statute to Sections 281.001 and 281.003, Texas Revised Civil Statutes Ann. art. 6812h, § 4,[27] is the statute that abolished the applicability of the doctrine of implied dedication of roads in counties of 50,000 or less. This statute was effective as of September 1, 1985. Graff does not point to any place in the record where he brought either statute to the trial court's attention. Whittle and Berry contend in their pleadings that, historically, the road in question had been a public road, and remains so at the present time. The evidence in this case reflects that if there was an implied dedication, it occurred long before the abolishing of the doctrine of implied dedication in 1985 of roads in counties of 50,000 or less. The Supreme Court of Texas has held in *Lindner v. Hill*,[28] that Article 6812h, which eliminated the common-law doctrine of implied dedication as of its effective date and which contains no provision that would make it retroactive, had no bearing on implied dedications which occurred before the Article's effective date. Although there was no showing that this statute was mentioned at the trial of this case, the pleadings and all the evidence indicate that it was contended and supported by the evidence that the implied dedication happened prior to Graff's ownership and prior to the statute abolishing the doctrine. The jury finding on implied dedication was not confined to any specific dates, but the only evidentiary basis for this finding was prior to the effective date of the statute. Thus, this statute would not affect the outcome of the present case.

■ Graff also contends that he never intended to dedicate the road to public use. This argument, however, fails to address Whittle and Berry's contention that Graff's predecessors dedicated the road to public use. A subsequent purchase of the property does not affect an implied dedication.[29] Graff contends that the record contains nothing to support the requisite intention, reliance, or acceptance.

■ [T]he essential elements of implied dedication are (1) the acts of the land-

**23.** *Ross v. American Radiator & Standard Sanitary Corp.*, 507 S.W.2d 806 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.); *McCart v. Cain*, 416 S.W.2d 463 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n.r.e.).

**24.** *Hill Farm v. Hill County*, 425 S.W.2d 414 (Tex.Civ.App.—Waco 1968), *aff'd*, 436 S.W.2d 320 (Tex.1969).

**25.** *See also Office of Pub. Util. Counsel v. Public Utility Comm'n of Texas*, 878 S.W.2d 598, 600 (Tex.1994). Rule 202 of the Texas Rules of Civil Evidence provides that a party may have an opportunity to be heard on the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, a party may request to be heard after the judicial notice has been taken. In the present case, any arguments in opposition to the taking of such judicial notice may be included in a motion for rehearing.

**26.** Tex. Transp. Code Ann. §§ 281.01, 281.003 (Vernon 1997).

**27.** Act of May 27, 1985, 69th Leg., ch. 509, 1985 Tex. Gen. Laws 2009.

**28.** *Lindner v. Hill*, 691 S.W.2d 590 (Tex.1985).

**29.** *O'Connor v. Gragg*, 161 Tex. 273, 339 S.W.2d 878, 881–82 (1960).

owner induced the belief that the landowner intended to dedicate the road to public use; (2) [the landowner] was competent to do so; (3) the public relied on these acts and will be served by the dedication; and (4) there was an offer and acceptance of the dedication.[30] The owner's intent to dedicate the property to public use must be clearly, unequivocally manifested.[31]

The owner's acts and declarations should clearly and unmistakably show the owner's intent to dedicate the land absolutely and irrevocably to the public's use.[32]

Whittle testified that he has lived since childhood on his parents' land in Manchester, Texas. In 1982, his mother deeded the land to him. His family always reached the property by traveling over the road in question. The area is surrounded by Kiamatia, Hooks Ferry, and Manchester communities. Historically, the area was used for timber operations and farming.

According to Whittle's testimony, while he was growing up the public continually used the road. Automobiles, trucks, wagons, and horses traveled the road. The road was used to reach a sawmill in the area. Finished product was transported back over the road. People also used the road to go fishing and hunting. The road was in good shape into the early 1960s. After the mill ceased operations, the road was less traveled. Other paved roads were built, making travel quicker.

Whittle further testified that during the last thirty years, he has used the road from three to ten times a year, even after Graff bought the property in 1981. Whittle has no other access to his land. People always have traveled the road to hunt without asking permission. People have traveled the road to hunt on Graff's land. At trial, Whittle and Berry's attorney introduced a 1951 Corps of Engineers map from which Whittle pointed out that the road at issue led up to what is now Graff's property.

James Dawson testified that he had grown up in the described area and that he is the brother-in-law of George Richardson, prior owner of Graff's property. Dawson testified that everyone used the road leading from Graff's to Whittle's property. Members of the black community used the road to reach a store in Kiamatia to catch a bus to Paris. People used a common route over the Pullatti Bridge through the Whittle property and across the road at issue. People used the road without there being an issue of permission. When the Richardsons owned the land, the gate was always open, and people used the road to reach Flag Pond. Over the years, erosion has occasionally altered the road's course; however, it retains its original beginning and ending points.

Eighty-one-year-old Alvin Woods, who had lived in the area all his life, testified about use of the road. When he was a child, the road was known as the Manchester and Hooks Ferry Road. It also has been known as the Taylor and Hooks Ferry Road. The Woods family used the road to transport corn. The road had a network of roads off of it, which were frequently used in the 1940s by the black community to reach a church and school. The road was the only ingress and egress from one community to the other before new county roads were built.

Berry testified that in 1966 he obtained his land in the area. He could reach it only by the road at issue. A seventy-six-year-old lifetime resident of the Manchester area described the road as coming from Kiamatia, through Graff's property, into Whittle's land, to Flag Pond. The road was as good as any road at the time. A logging contractor, Russell Robinett, hauled logs over the road. Robinett testified that "everyone" in the area used the road.

Namon Fisher, a seventy-seven year old lifetime resident of Kiamatia, testified that he used the road repeatedly to reach Manchester. He testified that the public traveled the road from Manchester to Flag Pond. He

---

**30.** *Lindner,* 691 S.W.2d at 591–92.

**31.** *Ladies' Benevolent Society of Beaumont v. Magnolia Cemetery Co.,* 288 S.W. 812, 814 (Tex. Comm'n App.1926, judgm't adopted).

**32.** *See City of Houston v. Scanlan,* 120 Tex. 264, 37 S.W.2d 718, 720 (1931).

testified that the road was traveled quite a bit and was as good as any road because there were no improved roads in the county at the time. He testified that Graff's property previously was owned by Richardson, who put a gate on the road. Richardson told Fisher that the people had reported him to a county official, and Richardson was instructed to give "everyone" a key. Fisher testified that after 1945 he "had permission" to use the property and that this was the route to buy groceries. Fisher testified he observed that the people in the area all had a key to the gate.

John Hawley, a lifelong resident of Bagwell, testified that he had used the road since childhood to go hunting and that everyone in the area who wanted to go in and out of there used the road, which was as good as any road in the area at the time.

A registered professional land surveyor, Royce Hammett, testified that he had surveyed the property prior to Graff's buying it in 1981. He testified that on the survey, he marked the course of the road over the property because a surveyor is required to note all existing or visible easements.

Whittle and Berry concede in their brief that "[o]bviously, the intention of the long ago landowners was not known by" the long-time residents of Red River County who testified about the public use of the road at issue. Whittle and Berry rely on the Red River County residents' perception of the public use of the road.

Absent direct evidence of the ancient owners' "overt act or specific declaration" indicating an intent to dedicate the property to public use, the dedication issue still may go to the jury as long as the intent properly can be inferred from the circumstances shown by the evidence.[33] One factor

supporting a jury's inference of intent to dedicate is long-continued public use.[34] If the origin of the public use and the ownership at the time are shrouded in obscurity and the parties can produce no showing of the owner's intention in allowing its use, continued public use raises a presumption of dedication.[35]

In *O'Connor v. Gragg,* the Texas Supreme Court held that evidence was sufficient to raise the presumption of an intent to dedicate and to support the finding of an implied easement.[36] In *O'Connor,* many long-time residents testified that the road had been a well-defined and traveled road for many years, used by the community generally, that it was in substantially the same position as the first time they had seen it, and that the users never sought permission but used the road under a claim of right as a public road.[37] For many years the road served a public school, a cemetery, and the community's residents.[38] The appellant, who owned "other land in the area, used the road long before he acquired title to the land which it crosses and acquired such title knowing of the existence of the road and of its use by the public generally as well as by [the appellee]." [39]

As in *O'Connor,* the evidence in the present case showed long, continued public use. As in *O'Connor,* the facts in the present case sufficed to show circumstances from which the jury could infer the owner's intent to dedicate, regardless of whether the evidence sufficed to raise a presumption of dedication.

In *Las Vegas Pecan & Cattle Co.,*[40] the Texas Supreme Court held that the evidence was sufficient to support a finding of implied dedication of a public road. In *Las Vegas Pecan,* the uncontroverted evidence was that the general public had used the road for over

**33.** *Harger v. Cason,* 223 S.W.2d 244, 246 (Tex. Civ.App.—Waco 1949, no writ).

**34.** *Conway v. Irick,* 436 S.W.2d 219, 223 (Tex. Civ. App.—Fort Worth 1968, writ ref'd n.r.e.).

**35.** *Fazzino v. Guido,* 836 S.W.2d 271 (Tex.App.— Houston [1st Dist.] 1992, writ denied); *Patterson v. Bowie,* 295 S.W.2d 676 (Tex.Civ.App.—Fort Worth 1956, no writ).

**36.** *O'Connor,* 339 S.W.2d at 881–82.

**37.** *Id.*

**38.** *Id.*

**39.** *Id.*

**40.** *Las Vegas Pecan & Cattle Co. v. Zavala County,* 682 S.W.2d 254, 256–57 (Tex.1984).

thirty years.[41] It was used as a mail route and school bus route, and the county maintained the road with county employees and equipment.[42] No witness knew of anyone ever asking or being denied permission to use the road.[43]

One of the owners who sold to Las Vegas Pecan & Cattle Company testified that Zavala County maintained the road during those thirty years, that he did not know that the family lacked title to it, and that he did not consider the road public property.[44] The Court found that "considered in the context of the hearing," the owner "was testifying that he considered the road to be a public road, but that the family claimed title to the remainder."[45] The Court found this "consistent with an acknowledgement that there was an implied dedication of an easement for public road purposes."[46]

As in *Las Vegas Pecan*, the evidence in the present case of long, continued, unquestioned use of the road supports a jury finding that Graff's predecessors in title acted to induce the public's belief that the road was dedicated, at least impliedly, to public use, that the public relied on this act and was served by the dedication, and that there was an implied offer and acceptance of the dedication. The record shows that there was some evidence to support the submission of the jury question and the overruling of the no-evidence challenge on the issue of whether there was a public road. We also find that there was legally sufficient evidence to support the jury's finding of a public road; therefore, we overrule these points of error.

■ Graff also challenges the factual sufficiency of the jury's finding of a public road. He presented the following evidence to show that no public road existed: He testified that he expended thousands of dollars trying to improve his property and that he built new roads on the property. He testified that the road at issue was a new road which he built

from the entrance gate to the corner of the Whittle property. Graff testified that the only people who used the road at issue prior to Whittle and Berry's logging operation were Whittle, Berry, Bill Holden, and the people they let hunt on their land.

Graff contends that the aerial photographs, admitted as exhibits, show that the road at issue did not exist in the 1980s, 1960s, and 1940s. Graff does not explain how these photographs show that the road did not exist then. He cites to no place in the record that explains which photograph was taken at which date; however, Graff testified that exhibit 98A was taken in the 1980s. The aerial photographs are not all on the same scale. Although they appear to show parts of the same landscape, each photograph also shows parts of the landscape not shown in the others. Graff has cited no place in the record to explain which portion of the land is at issue and where the road now exists. Although part of one exhibit is marked with a red line, Graff has not explained to the Court what that red line represents, nor has he cited to any place in the record which clarifies the exhibits.

The jury was instructed that the land owner could change the location of the right of way as long as it is suitable and convenient for the users of the road. No objection to this instruction was made on appeal. In *Brown v. Kelley*, the Fort Worth Court of Appeals determined that, even though the road in that case varied a few feet in some places, it was in the same general location that it had been in past years, so that the change was immaterial.[47] The Supreme Court of Texas held in *O'Connor* that, as long as the road was situated in substantially the same location as the road in use at the time of the trial, that was sufficient to identify it as the same road that had been dedicated.

41. *Id.*

42. *Id.*

43. *Id.*

44. *Id.*

45. *Id.*

46. *Id.*

47. *Brown v. Kelley*, 212 S.W.2d 834 (Tex.Civ. App.—Fort Worth 1948, no writ).

Having examined the entire record, we determine that the jury's finding of a public road was not clearly wrong and unjust. This point of error is overruled.

 Graff also contends that the trial court erred in admitting plaintiffs' exhibits 11, 21, 22, 26, and 27. Evidentiary rulings are within the trial court's sound discretion.[48] Graff contends that the trial court erred in admitting exhibits 11, 21, and 22 because they fell within a category of documents Graff requested in discovery, but were not produced.

Whittle and Berry offered exhibits 11, 21, and 22, certified copies of the minutes of the February 1897 meeting of the Red River County Commissioner's Court. They were offered to prove county funds were expended on the road. Graff contended that the documents were being offered to prove the road was a public road. Graff objected because the records had been requested by subpoena duces tecum on January 5, 1995.

Whittle and Berry contend that the trial court had good cause for its decision to allow exhibits 11, 21, and 22: (1) the documents were found only the day before the offer and not reviewed by counsel for Whittle and Berry until that night; (2) the documents were public records which Graff had as much access as did Whittle and Berry; (3) no discovery request cited by Graff in its trial court objection required the production of the documents; and (4) the impetus for the search of these records in particular was the subpoena Graff requested. Whittle and Berry correctly contend that the meeting minutes of the Red River County Commissioner's Court are public records.[49]

Texas Rule of Civil Procedure 201 says that a witness may be compelled to produce items or things within his care, custody, or control. Rule 166b provides the following guidance concerning the requirements for such production:

A person is not required to produce a document or tangible thing unless it is within the person's possession, custody, or control. Possession, custody or control includes constructive possession such that the person need not have actual physical possession. As long as the person has a superior right to compel the production from a third party (including an agency, authority, or representative), the person has possession, custody or control.

 Whittle and Berry contend that the February 1897 meeting minutes of the Red River County Commissioner's Court were not in Whittle's possession when he was noticed for his deposition. Furthermore, they were public records and, therefore, were just as available to Graff as to Whittle. Regarding the records, Whittle and Berry had no right superior to Graff's. Graff could have searched the records to locate the documents. Furthermore, the deposition notice cited by Graff in his brief, did not request production of the county commissioner's records in issue. A party is not required to supplement responses to matters to which there has been no appropriate inquiry directly addressing the matter of which a party complains.[50]

 Whittle and Berry further argue that the trial court did not err in refusing to adjourn the case to give Graff an opportunity to search the records because Graff always had that opportunity. Over two years had transpired from the filing of the case until the trial. Graff could have searched the records at any time. The trial court did not abuse its discretion by allowing the documents into evidence or by failing to adjourn or continue the trial. We overrule these points of error.

 Graff contends that the trial court erred in admitting Whittle and Berry's exhibits 26 and 27, the Abstracts of Title of Whittle's land, because (1) they were summaries of voluminous records and the underlying records were never produced in discovery or at trial to show their admissibility, (2) the trial court limited the purpose of their

---

48. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995).

49. *Id.*

50. *Yarborough v. Tarrant Appraisal Dist.,* 846 S.W.2d 552 (Tex.App.—Fort Worth 1993, no writ).

admission to exclude any issue of title or easement, therefore no basis existed for their admission, and (3) they did not support a proposition that is a provable matter.

Graff contends that the abstracts contain summaries of surveys and wills, that the person creating the abstracts relied on those documents and that, therefore, the deeds and wills are hearsay. The exhibits in question are often referred to in the trade as abstracts and are so entitled in this case, but examining these documents, we find they are not abstracts in the sense of being summaries, but rather are a collection of copies of documents referring to the specific land and its chain of title. These documents do not fall under the evidentiary rule on summaries. The exhibits are duly certified by the person having researched the chain of title.

■ Whittle and Berry take the position that the abstracts are admissible as ancient documents and as statements in documents affecting an interest in property. The documents represented are those filed of record with the office of the county clerk. Rule 803(16) of the Rules of Civil Evidence makes an exception to the hearsay rule for statements in ancient documents. The rule states that statements in a document in existence twenty years or more are admissible when the authenticity is established. Tony Wayne Whittle testified that his grandfather had received the abstract when he purchased this 450 acres of land. The opposing counsel objected to the admission of the exhibit on the basis that it was hearsay. The documents cannot be self-serving by accepting the date on the document as its actual age. The age should be verified by laying a proper predicate of evidence outside the document that establishes the age. Even though the documents may not have been properly proved up under the ancient document rule, exception 14 to Rule 803 provides an exception for the record of a document purporting to establish or effect an interest in property. When the exhibit is introduced as proof of the content of the original recorded document, and when the record is a record of a public office and an applicable statute authorizes according of documents of that kind in that office, it falls within this exception. All of these documents were properly recorded in the office of the county clerk. There was, however, further discussion about whether it was being introduced in any way to establish or effect an interest in the property that was being litigated.

Counsel for Whittle and Berry limited the purpose for which the exhibit was being offered. At that point, counsel for Graff stated, "Well, if he's offering it for a limited purpose and not offering it to prove title, then so be it." There was continued discussion on the admissibility, and Graff's attorney made objections concerning what the limited purpose of admission was. Whittle and Berry's attorney represented that he was offering the evidence to show who the prior owners were. He further stated that he was not trying to use the exhibit to argue unity of title.

Establishing a chain of title was not an essential element in the trial of this suit. It appears from the record that the hearsay objection was withdrawn, and instead, Graff's objection went to the limitation under which the exhibit was offered. The record does not reflect that the jury was ever instructed about any limitation in their consideration of this evidence. The judge did, in the presence of the jury, state that it would be received for the limited purpose stated by the attorney for Berry and Whittle. Graff's counsel immediately stated that it was his understanding that it was being received for purposes other than proof of unity of title or proof of title or proof of any element of easement or public way, and the court stated that was correct.

The record is somewhat rambling in regard to the objections. After withdrawing the hearsay objection, the remaining objections that were overruled dealt with the limited purpose of the admission of the exhibit and the fact it was introduced in rebuttal. The prior owners of the Whittle land had no bearing on the issues to be decided in this case. The fact that the Graff property may have been used for ingress and egress to the Whittle land did not concern whether those parties actually owned, rented, or were just visiting the Whittle property.

Graff had called into question whether Whittle and Berry's exhibits 26 and 27 referred to the road in issue. Whittle and Berry take the position that they offered the abstracts to show that they were consistent with land references contained in the abstracts of title. This purpose is within the limitation the trial court placed on the evidence, is a provable matter, and is proper rebuttal. As stated earlier, proof of the ownership of the Whittle tract was not essential and had no bearing on the finding of this property to be a public road, but was admissible to help establish the location of the strip of land in question. These points of error are overruled.

Graff contends that the jury's finding of no damages with regard to Graff's counterclaim for damages was against the great weight and preponderance of the evidence. Graff's counterclaim asserted that he suffered damages from Whittle and Berry's bad faith filing of their original suit to harass Graff and from their nonconsensual use of Graff's road. The determination by the jury and trial court that Whittle and Berry had established that the route in question was a public road defeats Graff's counterclaims for damages for its use.

In the judgment, based upon the jury's findings, the court made the following declaration: "The road in question running across Stanley Graff's property, which plaintiffs have used to obtain ingress and egress to their respective properties is a public road subject to use by the public, including plaintiffs, as any other public road."

The trial court continues in its judgment by saying, even if the property was not a public road, it would be an easement (specified the three different types of easements sought by Whittle and Berry as alternatives). We construe the judgment of the trial court to make a declaration that the property in question is a public road and that the references to the road being an easement is only an alternative determination in the event that an appellate court does not uphold the determination of a public road. This interpretation is based upon both the language of the judgment and the fact that it would be inconsistent for the court to find that the strip in question was both a public road and an easement.

Because we have made the determination that the relief granted was to declare the strip of property in question to be a public road, we do not address the remainder of the points of error that relate only to a determination of an easement.

The judgment of the trial court is affirmed.