

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-07-00053-CV

_____


ROD ROGERS AND MARY E. ROGERS, TRUSTEES OF THE
CRAWFORD M. ROGERS AND MARY E. ROGERS
REVOCABLE LIVING TRUST, Appellants

V.

JASPER STOVER, W. T. BARBER, RUBY RIGSBY, JOHN ADDINGTON,
AND BOWIE COUNTY, TEXAS, Appellees

On Appeal from the 102nd Judicial District Court
Bowie County, Texas
Trial Court No. 05C0283-102

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

The parties dispute a purported right of access across Bowie County land owned by Rod Rogers and Mary Rogers, Trustees (referred to collectively as Rogers unless stated otherwise). Jasper Stover, W. T. Barber, and Ruby Rigsby (the neighbors), claim it is a public road, as do Bowie County and, asserts Rogers, its named County Commissioner, John Addington. The parties differ on (a) the nature of the prior use of the property for access and (b) the quality of the road, path, or trail, as it was variously referenced. And, though everyone presumes to know where the road is located, no evidence in the record establishes its location.

After opposing lawsuits[1] were consolidated, the neighbors and Bowie County filed motions for summary judgment, and the County filed a motion to dismiss for want of jurisdiction based on sovereign immunity. The trial court granted the summary judgment for the neighbors and granted the County's motion to dismiss.

We reverse the summary judgment rendered for Stover, Barber, and Rigsby and affirm in part the trial court's dismissal of the County. The reasons for those actions can be summarized in two statements: (1) existing fact issues preclude the summary judgment; and (2) the damage claims

---

[1]In one suit, Stover, Barber, and Rigsby sought judgment that they had the right to use a road across Rogers' property, arguing it was a public road. In the other suit, Rogers alleged the Stover parties engaged in a conspiracy to unlawfully acquire his property and slander his title. Rogers' suit also joined Bowie County, alleging it had waived governmental immunity by claiming ownership of his land and by conspiring with the other individual defendants to lawfully obtain his land. Rogers sought a declaration of rights under the Declaratory Judgments Act and an injunction barring defendants from trespassing. Rogers also sought damages between $10,000.00 and $100,000.00 from all defendants for trespass.

against the County were properly dismissed, while the declaratory judgment claims should not have been dismissed.

*Factual Background*

Rod Rogers' parents purchased the land in question in the early 1960s. It was bordered by "Holly Creek Road," a county road. Crossing the property at that time was what was described as a "rutted narrow trail from Holly Creek Road" that was one vehicle wide and described as so rough only a truck could use it.

Around 2000, Rogers erected a fence across the road. The three neighbors complained because the presence of the fence required them to use other routes to access their properties. Their basic argument is that, because the "road" had been used by the public for so long before 1963, it became impliedly dedicated as a public road as a matter of law.

The court granted the neighbors' motion for summary judgment. Though Bowie County also filed a motion for summary judgment incorporating the neighbors' motion, the County received no summary judgment relief. But the County had also filed a motion to dismiss for lack of jurisdiction, claiming the pleadings failed to affirmatively allege a waiver of immunity. The trial court granted the motion and dismissed Rogers' claim against the County.

(1) *Existing Fact Issues Preclude the Summary Judgment*

Rogers contends the trial court should not have granted the neighbors' motion for summary judgment. We agree.

A summary-judgment movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). In our review, we take as true all summary-judgment evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

> All roads which have been laid out and established by authority of the commissioners' courts are public roads. A road not originally established under the statute may become public by long-continued use and adoption as such by the county commissioners with the assent of the owner or by prescription. A road may also become public, in the sense that the public have the right to use it, by dedication.

*Worthington v. Wade*, 82 Tex. 26, 17 S.W. 520, 521–22 (1891). In this case, there was no evidence a road had been established or laid out by the Commissioners' Court. Where no statute is applicable, common law controls.

Under the common law, a property owner can either expressly or impliedly dedicate property to a public use. *Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 503 (Tex. App.—Texarkana 2002, pet. denied). The owner's intention to dedicate must be shown by something more than an omission or failure to act or acquiescence on the part of the owner. The facts constituting dedication cannot be left to conjecture; when the asserted dedication rests in estoppel, the evidence should clearly and satisfactorily establish the necessary facts. *Henderson v. Frio County*, 362 S.W.2d 406 (Tex. Civ. App.—San Antonio 1962, no writ).

4

This case does not involve an express dedication. The question is whether summary-judgment evidence conclusively proved that a roadway exists and that rights to use the road have been acquired by implied dedication. Whether an implied dedication exists is typically a question of fact. *See Lindner v. Hill*, 691 S.W.2d 590, 591 (Tex. 1985); *Lee v. Uvalde County*, 616 S.W.2d 367, 372 (Tex. Civ. App.—Tyler 1981, no writ). Implied dedication requires a clear and unequivocal intention on the part of the landowner to appropriate the land to public use, along with an acceptance by the public. *Gutierrez v. County of Zapata*, 951 S.W.2d 831, 838 (Tex. App.—San Antonio 1997, no writ); *see also Eastex Wildlife Conservation Ass'n v. Jasper*, 450 S.W.2d 904, 913 (Tex. Civ. App.—Beaumont 1970, writ ref'd n.r.e.) (unless landowner "intended to dedicate the land absolutely and irrevocably to the use of the public," plaintiffs could not prevail under theory of implied dedication).

When it is alleged that a particular landowner impliedly dedicated property to a public use, four elements must ordinarily be proven: (1) the landowner's actions allow the belief that he or she intended to dedicate the road to public use, (2) he or she was competent to dedicate the road, (3) the public relied on the owner's acts and will benefit from the dedication, and (4) the offer of dedication was accepted. *Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex. 1985) (citing *Las Vegas Pecan & Cattle Co. v. Zavala County*, 682 S.W.2d 254, 256 (Tex. 1984)); *Reed v. Wright*, 155 S.W.3d 666, 671 n.6 (Tex. App.—Texarkana 2005, pet. denied). When an alleged implied dedication occurred so far in the past as to have no available proof of the intent of the then-owner of the property, evidence of actual use, the purpose of the use, permission for the use, the nature of the road itself, and

5

maintenance of the road by the government or by neighbors can all become important in our review. *See Camilla Twin Harbor Volunteer Fire Dep't, Inc. v. Plemmons*, 998 S.W.2d 413, 415 (Tex. App.—Beaumont 1999, pet. denied).[2]

As we recently explained in *Reed*, uncontested evidence of the long and continuous use of the disputed road by the public raises a presumption of donative intent.[3] 155 S.W.3d at 671–72. When the origin of the road cannot be determined, evidence of long and continued use by the public can raise a presumption that the landowner intended to dedicate the road. For the presumption to apply, the origin of the road must be "shrouded in obscurity" so that no evidence of the intent of the owner is available. *O'Connor*, 339 S.W.2d at 882; *Reed*, 155 S.W.3d at 672; *Supak v. Zboril*, 56 S.W.3d 785, 790 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *Graff v. Whittle*, 947 S.W.2d 629, 637 (Tex. App.—Texarkana 1997, writ denied); *Fazzino v. Guido*, 836 S.W.2d 271, 274 (Tex. App.—Houston [1st Dist.] 1992, writ denied).

As we also recognized in *Reed*, there is some language in *O'Connor* indicating that the presumption falls short of a full presumption of dedication. 339 S.W.2d at 882. Specifically, the *O'Connor* court stated, "a presumption of acquiescence is raised when the origin of the use[] by the

---

[2]"Since, by a dedication, valuable rights in land pass from the owner, no presumption of an intent to dedicate arises, unless it is clearly shown by his acts and declarations, or by a line of conduct, the only reasonable explanation of which is that a dedication was intended." *Int'l & G.N.R. Co. v. Cuneo*, 108 S.W. 714, 715 (Tex. Civ. App. 1908).

[3]*O'Connor v. Gragg*, 161 Tex. 273, 339 S.W.2d 878, 882 (1960); *see Betts v. Reed*, 165 S.W.3d 862, 866 (Tex. App.—Texarkana 2005, no pet.).

6

public and the ownership of the land at that time are shrouded in obscurity, and no evidence exists to show the intention of the owner in allowing the use." *Id*. Later in the same opinion, the court stated "the law raises a presumption that the requisite intention and acts disclosing it were present," but without expressly considering the other elements of dedication in affirming the finding of implied dedication *Id*. at 883.

We have interpreted *O'Connor* to hold that, if the origin of the road is shrouded in obscurity, long and continuous public use establishes a presumption of dedication, not just the intent to dedicate. *Graff*, 947 S.W.2d at 637; *see Fazzino*, 836 S.W.2d at 274. *But compare Supak*, 56 S.W.3d at 790 (when origin of road is shrouded in obscurity, presumption of donative intent arises). We maintain our position as stated in *Graff* and *Reed* that, if the origin of the road is shrouded in obscurity and there is no contrary showing of the owner's intention, long and continuous public use raises a presumption of dedication.

Thus, the dispositive questions are whether the neighbors conclusively proved that the origin of the "road" was "shrouded in obscurity" and that, from that time, it was subject to long and continuous use by the public.

With all of these factors in mind, we now examine the summary judgment evidence. The neighbors provided four affidavits from individuals that address the relevant, older time frame. There is other summary judgment evidence, but it has no apparent purpose other than to show a trail of ownership. That is not relevant to this review.

Ruby Rigsby averred that she had owned property "on the West side of the road the subject of this suit," and that since 1944 she and the public have used "the road the subject of this suit." She then goes on to state she had never asked permission to use the road and had always understood it to be a public road.

Elphenia Lewis' affidavit stated that she was a descendant of the Callahan family that had previously owned the Rogers property, that she was familiar with the property and "road that is the subject of this lawsuit," that she "recall(s) the public using the road and her family allowing this use when she was a child," that she is now sixty-three years old and has "knowledge that the road that is the subject of this lawsuit has always been used by the public for as long as I can recall." She then went on to state, like Rigsby's affidavit, that she had never asked permission to use the road and that, "I have always understood it to be a public road."

Lucretia Rochelle swore that she was also a descendant of the Callahan family that had previously owned the Rogers property and that she recalled the public using the road and her family allowing the use when she was a child. She recalled Grover Bishop, an adjoining landowner, using the road to haul and dump trash on his adjoining property. She stated she is now eighty-eight years old and had "knowledge that the road that is the subject of this lawsuit has always been used by the public for as long as I can recall." She also went on to state that she had used the road, that she had never asked permission to do so, and that she had always understood it was a public road.

8

Celia Duffie stated in her affidavit that she was a descendant of the Hall family that had previously owned the Rogers property. She stated that she was "familiar with the property and road that is the subject of this lawsuit," that she recalled the public using the road since she was a child, that she is now seventy-eight years old, and that, "I have knowledge that the road that is the subject of this lawsuit has always been used by the public for as long as I can recall." In lockstep with the other affidavits, she stated, "I have used the road, and have never asked permission to do so. I have always understood it to be a public road."

In response to the neighbors' motion for summary judgment, Rod Rogers presented his own affidavit. Rogers stated that his parents had purchased the property in the early 1960s and that, although the property was bordered on the north by Holly Creek Road, access to their property was not possible from Holly Creek Road because it was blocked by trees. He stated that, instead, they used a "rutted narrow trail from Holly Creek Road on the western edge of the property" to access the remainder of their land. He described the lane as "barely wide enough for one vehicle to use and was so rough that only a truck could use it. My father and I smoothed the lane and put fill material on it to make it passable." Rogers stated that, when they purchased the property, only one person used the lane, Grover Bishop. Rogers stated that, although Bishop used the lane only infrequently to dump materials, his father had given Bishop permission to use the lane. Rogers also stated that Ruby Rigsby purchased thirty acres abutting the west side of his land in 1979. Rogers also stated that "the lane has never been used by a law enforcement, fire or ambulance vehicle. No school bus or U.S.

9

Postal Service vehicle has ever traveled on the Rogers' lane. No county maintenance equipment or county employees have ever been present on the lane nor done any repairs, maintenance or work of any kind on the lane."

The neighbors filed a very thorough motion with various complaints about Rogers' affidavit, styled as special exceptions to a number of the paragraphs in his affidavit. In five pages, and fifteen numbered paragraphs of complaint about a two-page affidavit, the neighbors essentially complain that Rogers did not show how he had personal knowledge of the matters asserted and that his statements were thus hearsay and inadmissible.[4] The neighbors also complain that Rogers' affidavit about Rigsby contradicts her affidavit.[5] Nevertheless, the trial court granted the "special exceptions" to Rogers' summary judgment evidence without comment. Both parties have ignored that order in briefing this appeal.

We first examine some types of evidence used in this type of case. Although county maintenance of a road has not been dispositive, a number of cases have found dedication in cases in which county maintenance had been shown. *See, e.g., Lindner*, 691 S.W.2d at 591–92. Similarly, cases that found an implied dedication also cited proof that a road had been used for school bus travel or a mail route. *See Las Vegas Pecan & Cattle Co.*, 682 S.W.2d at 257. Similarly, although as

---

[4]The neighbors also complained Rogers had misstated a matter set out in a deposition—that Matthews had stated he had not understood the road to be a county road. Even the quoted section of the affidavit provided by Stover shows the opposite. Rogers' affidavit precisely sets out exactly what Matthews did say.

[5]That is permissible, and generally is the purpose of dueling affidavits.

10

discussed above, the required continuous use can be by a very limited clientele—courts finding dedications have also looked to the scope of public use, such as by tourists, fishermen, or fish camp renters, or examined whether the road use was essential in some way. *See Gutierrez*, 951 S.W.2d at 838–42.

In our case of *Reed*, the evidence showed that the road at issue was necessary in order to access another road—which had previously been declared a public road—on an adjoining tract. Without the use of Cherry Lane, the Goff road would have been unreachable. Cherry Lane also appeared on a plat from 1951, and there was testimony that long-time neighbors had used the road twice a day since the 1950s and that a neighboring nursery and its customers used the road to access parts of the nursery.

Similarly, in *Betts*, this Court reviewed evidence a road had been used by the public since the 1920s, had been fenced on both sides, and had been (for some years, but ending in the 1950s or 1960s) maintained by the county. We found the evidence sufficient to support a verdict in that case. *Betts*, 165 S.W.3d at 869–70. The evidence in this case is different.

Further, the question is whether the necessary elements have been proven as a matter of law. This case has several factual distinctions from either *Betts* or *Reed*.

One problem we see with the evidence supporting the summary judgment is that it fails to establish continuous use before 1963. To be sufficient to support the summary judgment, the evidence must conclusively prove the "road" had been in continuous use by the public. This evidence

does not conclusively show that. It shows use, at unspecified times during a considerable span of years, much of which was by individuals who had the right to do so because their parents owned the property. These affidavits do not conclusively establish that any use that occurred was continuous.

Another problem we identify in the affidavits relates to the use by the public. While the affidavits do say the affiants never asked for permission to cross the land, they are executed by children of prior landowners. Since their parents owned the land at the time, it would seem unlikely they would be required to ask for permission to use the "road." They do not conclusively establish that the use was by the public rather than by the landowner's family. True, each affidavit states the affiant had always "understood it to be a public road." Although "understanding" that the location was a public road is some evidence, it is not conclusive.

The affidavits also state that the descendants of former owners, ages eighty-eight, sixty-three, and seventy-eight, recalled the public using the road when they were children. While that is evidence of public use, it says nothing about the continuity of that use.

Finally, there is no evidence fixing the actual physical location of "the road." Because the pleadings do not describe the road location, the affidavits—which reference merely "the road that is the subject of this lawsuit"—do not fix that location. It is impossible to ascertain from this record whether the road in question is even the same location described by the various affidavits, or, for that matter, whether they are separately speaking of the same location. One might assume that at least the

12

affidavits from relatives speak of the same location, but the evidence does not affirmatively show this to be the case.

At most, the affidavits indicate that, at some vague points in time while certain mature adults were children and lived on the property, they used the road and understood it to be a public road.[6] Proof was not conclusive.

We reverse the summary judgment and remand this case to the trial court for further proceedings.

*(2)*       *The Damage Claims Against the County Were Properly Dismissed, While the Declaratory Judgment Claims Should Not Have Been Dismissed*

Rogers also contends the trial court erred by granting the County's motion to dismiss, which was done based on sovereign immunity. Rogers claims the County was not immune to his claim because his claim against the County was for a declaration of rights, not for damages.

---

[6]We note, too, that no evidence supporting the summary judgment shows the condition of the "road." The affidavits simply referred to it as a "road" with no further explanation. Rogers' responsive affidavit describes the "road" as a virtually impassable rut or trail. That may raise a question about whether a road was involved at all, or merely a trail passable by horses or children afoot. That state of the proof could also influence the fact issue of "continuous" use before 1963. The 1963 condition of the "road" could provide some proof of its use, or lack of use, before that date. Since the affidavits do not show the condition of the "road" before 1963, Rogers' affidavit provides the only evidence of its condition, that it was virtually impassable.

A county is a governmental unit protected by the doctrine of sovereign immunity.[7] *Travis County v. Pelzel & Assocs.*, 77 S.W.3d 246, 248 (Tex. 2002). The propriety of the County's dismissal in this case hinges on the extent to which the lawsuit sought damages from the County. The argument is that, because damages were sought, Rogers had to allege an exception to immunity that would allow a recovery from the County. If Rogers did not seek damages, then no exception was necessary. A declaratory judgment may be sought from a governmental entity, so long as such claim is not a subterfuge for obtaining a damage award from the entity.

We recognize that courts have held that certain declaratory judgment actions do not implicate the doctrines of sovereign or governmental immunity. *See, e.g., Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994); *City of Dallas v. Martin*, 214 S.W.3d 638, 644 (Tex. App.—Dallas 2006, pet. filed) (no governmental immunity in suits to construe legislation). Texas courts distinguish suits to determine a party's right against a governmental unit from suits seeking damages. *See City of Houston v. Houston Firefighters' Relief & Retirement Fund*, 196 S.W.3d 271, 277 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A declaratory judgment action against the government seeking a declaration of a party's rights and status under a statute is not barred by governmental

---

[7]Generally, a governmental unit possesses both immunity from liability and immunity from suit. *Pelzel & Assocs.*, 77 S.W.3d at 248; *Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 705 (Tex. 2003). Governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). No argument suggests that the County would be immune from this suit, instead of just immune from liability.

immunity. *See Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 860 (Tex. 2002); *Bell v. City of Grand Prairie*, 221 S.W.3d 317, 323 (Tex. App.—Dallas 2007, no pet.). A party can maintain a suit to declare rights without obtaining legislative permission. *See Houston Firefighters' Relief & Retirement Fund*, 196 S.W.3d at 277.

But, governmental immunity bars suits for declaratory judgment that seek a declaration of the government's liability for money damages. *See IT-Davy*, 74 S.W.3d at 859–60; *Bell*, 221 S.W.3d at 324. A party cannot circumvent the doctrine of governmental immunity by characterizing a suit for money damages, such as a contract dispute, as a declaratory judgment action. *See IT-Davy*, 74 S.W.3d at 856; *Martin*, 214 S.W.3d at 644; *Houston Firefighters' Relief & Retirement Fund*, 196 S.W.3d at 277; *City of Seagoville v. Lytle*, 227 S.W.3d 401, 410 (Tex. App.—Dallas 2007, no pet.).

Rogers directs us to *Oake v. Collin County*, 692 S.W.2d 454 (Tex. 1985), as authority that one can bring a declaratory judgment action against a county in connection with a land dispute. We agree. *Oake* stands for the proposition that sovereign immunity is not a blanket protection for a governmental entity for actions that truly seek a declaration of rights.

The County argues that, because the neighbors' action was for ownership and control of the roadway, it sought the transfer of something of value and thus was a suit for damages.[8] We disagree.

---

[8]There is authority holding that, where the relief sought is declaratory but would require the transfer of value, the relief is not declaratory in nature. *See Sante Rehab, L.P. v. Nat'l Heritage Ins. Co.*, No. 03-03-00738-CV, 2004 Tex. App. LEXIS 7174 (Tex. App.—Austin Aug. 12, 2004, pet. denied) (mem. op.). That case, however, sought to order an agency to take an action which would require transfer of money.

A suit to declare ownership changes nothing, transfers nothing, causes no result that might be considered an award of damages. The requested declaratory judgment would not change ownership or rights; it would only recognize rights that already exist. Thus, that aspect of the County's argument necessarily fails. *See Wood v. Walker*, No. 07-05-00392-CV, 2007 Tex. App. LEXIS 2370 (Tex. App.—Amarillo Mar. 27, 2007, no pet.) (declaratory judgment appropriate remedy in suit involving existence of county road).[9]

That conclusion does not entirely doom the County's dismissal. In this case, the pleadings show that Rogers sought not only declaratory relief, but also damages. Rogers alleged an injury and sought an award of damages from all parties, including the County.

If the only real goal of a declaratory judgment action is to gain a money judgment, the suit must be dismissed. *City of Houston v. Williams*, 216 S.W.3d 827, 828–29 (Tex. 2007). To the extent an action seeks damages against a governmental entity for which immunity has not been waived, a dismissal is required for want of jurisdiction; but to the extent an action truly seeks a declaration of rights, that action may be maintained against the entity. *Lowell v. City of Baytown*, No. 01-04-00548-CV, 2007 Tex. App. LEXIS 6292 (Tex. App.—Houston [1st Dist.] Aug. 9, 2007, no pet.); *see Bell*,

---

[9]A trial court has discretion to award reasonable and necessary attorney's fees as are equitable and just in suits filed under the Declaratory Judgments Act. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 1997). A trial court's discretion in deciding whether to award attorney's fees in a declaratory judgment action is broadly construed and will not be reversed absent a clear abuse of discretion. *Oake*, 692 S.W.2d at 455; *Wood*, 2007 Tex. App. LEXIS 2370.

221 S.W.3d at 325 (to extent claimant does not seek money damages, declaratory judgment action and injunction not barred by governmental immunity). This action included both types of claim.

The trial court thus did not err by dismissing Rogers' claim against the County for money damages, but did err in dismissing the declaratory judgment claims.

We reverse the summary judgment, reverse the dismissal of the County as to the declaratory judgment action, and remand those portions of the case to the trial court for further proceedings. We affirm the judgment dismissing from the suit the damage claims against the County.

_____  Josh R. Morriss, III
Chief Justice

Date Submitted:    October 31, 2007
Date Decided:      January 18, 2008

17