NUMBER 13-05-460-CV

 

                         COURT
OF APPEALS

 

               THIRTEENTH
DISTRICT OF TEXAS

 

                  CORPUS
CHRISTI - EDINBURG

___________________________________________________________________

 

AMERICO ENERGY RESOURCES,
LLC,                         Appellant,

 

                                           v.

 

THE STATE OF TEXAS, BY AND THROUGH THE

TEXAS DEPARTMENT OF TRANSPORTATION,                Appellee.

___________________________________________________________________

 

                  On
appeal from the 127th District Court

                            of Harris County, Texas.

___________________________________________________  _______________

 

                     MEMORANDUM
OPINION[1]

 

                   Before
Justices Hinojosa, Yañez, and Rodriguez 

                      Memorandum
Opinion by Justice Rodriguez

 








This appeal arises from a declaratory judgment action filed by
appellee, the State of Texas (the State) acting by and through the Texas
Department of Transportation (TxDOT), to determine easement interests claimed
by appellant, AmeriCo Energy Resources, LLC (AmeriCo), in five pipelines
located in the path of the Tomball Bypass highway construction project (Bypass
Project), northwest of Houston, Texas.[2]  The State and AmeriCo filed motions for
summary judgment.  Granting the State's
motion and denying AmeriCo's motion, the trial court entered a judgment
declaring that AmeriCo was not the record owner of a relevant pipeline easement
and that the State could lawfully remove pipelines traversing the land at
issue.  On appeal, AmeriCo generally
contends the trial court erred in denying its summary judgment motion and in
granting the State's motion because AmeriCo proved its ownership interest in
the easements, rights-of-way and pipelines at issue in this appeal.  Because we conclude there are material fact
issues still in dispute, we affirm the trial court's denial of AmeriCo's motion
for summary judgment and reverse the trial court's granting of the State's
motion for summary judgment and remand for further proceedings.

                                                    I.  Background








This case involves the State's construction of the Tomball
Bypass.  Tandem Energy Corporation
(Tandem) and Tortuga Operating Company (Tortuga) were among the original
defendants in the suit.  After the State
joined AmeriCo, Tandem and Tortuga settled with the State and entered into an
agreed judgment as to their rights.  The
State's case against Tandem and Tortuga was severed and all other defendants,
except for AmeriCo, were dismissed.








AmeriCo and the State filed motions for summary judgment to establish
AmeriCo's interest, if any, in the pipelines located in Parcels 403 and 404 of
the Bypass Project.[3]  Through the exchange of motions for summary
judgment, responses, and replies, AmeriCo claimed it proved that it received
protected property interests through the Gaither and the Genesis chains of
title, and the State asserted that AmeriCo had not established unbroken
conveyances of the relevant easement and, thus, had no legitimate interests in
the claimed pipelines.  The trial court
granted the State's motion and denied AmeriCo's motion entering the following
declarations concerning "the respective legal rights of Americo and the
State regarding pipelines traversing Parcels 403 and 404":

1.  That Americo . . . is not the record owner of
the 1937 Otto Rudel pipeline easement recorded at volume 1048, page 249, of the
Harris County Deed Records;

 

2.  That Americo has no standing to challenge the
current fee owners' intended use of Parcels 403 and 404;

 

3.  That there is no evidence that Americo has
ever used or operated the five pipelines it is claiming across Parcels 403 and
404; and

 

4.  That pursuant to the Rights of Entry and
Possession which the current fee owners of Parcels 403 and 404 granted to
TxDOT, TxDOT or its contractors, may lawfully remove the five identified
pipelines traversing Parcels 403 and 404 at TxDOT expense.

 

It
is from the trial court's order that AmeriCo brings this accelerated appeal.[4]








II.  Burden of Proof

In a declaratory judgment action, "[t]he ultimate burden of proof
is upon the party who, upon the pleadings, asserts the affirmative claim, and
who, therefore, in the absence of evidence will be defeated, and hence is not
determined by the position of the parties on the docket as plaintiff or
defendant in the declaratory action." 
McCart v. Cain, 416 S.W.2d 463, 466 (Tex. Civ. App.BFort Worth 1967, writ
ref'd n.r.e.) (quoting McDonald Texas
Civil Practice, Vol. 1, Ch. II, ' 2.06, p. 142, 145); see
Dyegard Land P'ship v. Hoover, 39 S.W.3d 300, 308 (Tex. App.BFort Worth 2001, no
pet.) (concluding that "in a declaratory judgment action in which the
defendant seeks to enforce a restrictive covenant, the defendant retains the
burden of proof to establish that the necessary legal steps have been taken to
render such restrictions effective, binding, and mutually enforceable"); Graff
v. Whittle, 947 S.W.2d 629, 634‑35 (Tex. App.BTexarkana 1997, writ
denied) (determining in a declaratory judgment action, the defendants, who
contended they had a right to use the road because it was a public road and
because they had an easement in the road, asserted the affirmative of the
controlling issue and had the burden of proof). 
In this case, AmeriCo contends that it has affirmative rights including
interests in easements, rights of way, pipelines, and pipeline conduits across
Parcels 403 and 404.  The judgment's
effect was to deny AmeriCo those rights. 
Therefore, we conclude AmeriCo has the burden of proof in this
declaratory judgment action.

 








III.  Standard of Review

Declaratory judgments are reviewed under the same standards as all
other judgments.  Tex. Civ. Prac. & Rem. Code Ann. ' 37.010 (Vernon 1997);
Ski River Dev., Inc. v. McCalla, 167 S.W.3d 121, 133 (Tex. App.BWaco 2005, pet.
denied); In re Estate of Schiwetz, 102 S.W.3d 355, 365 (Tex. App.BCorpus Christi 2003,
no pet.).  The movant for a traditional
summary judgment has the burden of showing that there is no genuine issue of
material fact, and that it is entitled to judgment as a matter of law.[5]  See Nixon v. Mr. Prop. Mgmt Co., 690
S.W.2d 546, 548 (Tex. 1985).  In deciding
whether there is a disputed material fact issue precluding summary judgment,
evidence favorable to the nonmovant will be taken as true.  See id. at 548-49.  A summary judgment is reviewed de novo
because the propriety of summary judgment is a question of law.  Natividad v. Alexis, Inc., 875 S.W.2d
695, 699 (Tex. 1994); Fiallos v. Pagan-Lewis Motors, Inc., 147 S.W.3d
578, 582-83 (Tex. App.BCorpus Christi 2004,
pet. denied).








When both parties file a motion for summary judgment and one is
granted and one is denied, as in this case, we review the summary judgment
evidence presented by both sides and determine all questions presented and
render such judgment as the trial court should have rendered.  FM Props. Operating Co. v. City of Austin,
22 S.W.3d 868, 872 (Tex. 2001).  "If
the issue raised is based upon undisputed and unambiguous facts, then the
reviewing court may determine the question presented as a matter of law."  Gramercy Ins. Co. v. MRD Invs., Inc.,
47 S.W.3d 721, 724 (Tex. App.BHouston [14th Dist.]
2001, pet. denied).  "However, if
resolution of the issues rests on disputed facts, summary judgment is
inappropriate, and the reviewing court should reverse and remand for further
proceedings."  Id.

IV.  Interest in Easements and
Rights of Way Across Parcels 403 and 404








By its first and second issues, AmeriCo contends the trial court erred
in granting summary judgment in favor of the State and denying AmeriCo's motion
for summary judgment because its protected interests can be traced through the
Gaither and Genesis chains of title. 
While acknowledging that an interest in the easement and rights of way
in pipelines designated as AmeriCo(1), Unknown (103) and Unknown (105 & 60)
was not conveyed through the Gaither chain of title, AmeriCo contends that the
summary judgment evidence proves it received a concurrent use in the easements
and rights of way appurtenant to these pipelines, as well as an interest in the
pipelines and pipeline conduits.  AmeriCo
also asserts that it acquired pipelines designated as Tomball Production (9)
and (10) and their supporting easements from the Genesis chain of title.

The State argues that AmeriCo holds no easement interests through
either the Gaither chain or the Genesis chain of title.  It contends that the documents from the
Gaither chain of title show that the relevant pipeline right-of-way easement
was never transferred to AmeriCo's predecessor in interest and that the
documents from the Genesis chain fail to establish a chain of title to the
relevant pipeline right-of-way easements. 
The State argues that, because AmeriCo does not hold a pipeline easement,
it has no standing to challenge the State's intended use of Parcels 403 and 404
and TxDot or its contractors may lawfully remove the five identified pipelines
traversing Parcels 403 and 404.

A.  Summary Judgment Evidence

1.  Documents Related to the Gaither Chain of
Title for Pipelines 

Designated as
AmeriCo(1), Unknown (103),and Unknown (105 & 60)

 








The documents and exhibits attached as supporting evidence to motions
filed by AmeriCo and by the State set out that in 1937 Otto and Mathilda Rudel
conveyed to Humble Oil and Refining Company (Humble) a right of way and
easement "to lay, maintain, operate, replace, change and remove any and
all pipe lines for the transportation of oil, gas and/or water and/or their
product, with all incidental equipment." 
In 1993, Exxon Corporation, as successor to Humble, assigned to Gaither
Petroleum Corporation (Gaither) its interest in the 1937 Rudel easement
including conduit pipes therein.  On
November 19, 1997, by assignment and bill of sale, Gaither conveyed to Sierra
1996-I Limited Partnership (Sierra) various leasehold estates and pipeline
conduits but excluded "[a]ll easements, permits, licenses, surface and
subsurface leases, rights-of-way, servitudes, and other surface and subsurface
rights affecting the Interests, including the items listed on Exhibit
B."  Exhibit B expressly listed the
1993 Exxon conveyance as one of the excluded items.  While excluding identified rights related to
the 1993 Exxon conveyance, Gaither assigned to Sierra "the concurrent use
and access in and to the easements and rights-of-way for the purpose of
maintaining pipelines and for the transporting and marketing of the oil and/or
gas produced from the lease(s) conveyed hereby, so long as the lease(s)
remained in full force and effect." 
Additionally, in a bill of sale for pipeline conduits dated October 1,
1997, Gaither assigned title and interest in the relevant conduit pipes but
conveyed "no title in or to any rights of way, easements or other property
rights, titles or interests." 
Effective March 1, 2000, Sierra conveyed to AmeriCo "all of
[Sierra's] right, title and interest in, to and under [properties identified in
attached exhibits A-1 and A-2]." 
Exhibit A-2 included all of the oil and gas leases described in the
conveyance effective October 1, 1997 between Gaither and Sierra.

2.  Documents Related to the Genesis Chain of
Title for Pipelines 

Designated as Tomball
Production (9) and (10)

 








The documents and exhibits attached as supporting evidence to motions
filed by AmeriCo and by the State reflect that through a conveyance, assignment
and bill of sale dated December 2, 1996, Howell Pipeline Texas, Inc., (Howell)
conveyed to Genesis Crude Oil, L.P., (Genesis) various interests including all
easements described on Exhibit A, an exhibit attached to that conveyance.  Exhibit A listed earlier conveyances from
Exxon to Howell; however, it provided no description of what had been conveyed
from Exxon to Howell and subsequently to Genesis.  In October 1999, Genesis conveyed to Sierra
"all right, title and interest of Genesis . . . in and to that certain
pipeline system . . . including, but not limited to . . . those certain
easements and Pipelines conveyed to Genesis . . . in that certain Conveyance,
Assignment and Bill of Sale by Howell . . . dated December 2nd, 1996 . . .
."  Effective March 1, 2000, Sierra
conveyed to AmeriCo "all of the easements, licenses, authorizations,
permits, personal property, pipelines, fixtures, improvements, surface leases
and other surface rights and similar rights and interests applicable to, or
pertinent to, the ownership and operations of the Wells, including without
limitation, the property described or referred to in the documents of title
described in Exhibit 'A-3' hereto." 
Listed in Exhibit "A-3" was the October 1999 conveyance from
Genesis to Sierra.

3.  Affidavits Filed by AmeriCo in Support of 

AmeriCo's Easement
Interests in the Five Pipelines

 








Based on his review of the documents in the Genesis chain of title,
Ronald C. Jackson, a professional landman and consultant, concluded that the
pipelines identified in Exhibit "A" attached to the 1999 conveyance
from Genesis to Sierra "have been duly transferred from Howell to Genesis
and constituted part of the Tomball Gathering System crude oil pipeline owned
by Howell."  Listing easements and
rights of way that had been conveyed to Genesis from Howell, Jackson traced
Howell's interests back to various easements and rights of way including a June
20, 1934 easement from Otto Rudel and a February 20, 1934 right of way from
Otto Rudel.  According to Jackson,
AmeriCo obtained from Sierra through the Genesis chain of title,
"ownership and rights to all right of way and easements, pipeline system
and conduits" constituting part of the Tomball Gathering System crude oil
pipeline.

Lee Anderson, a landman, reviewed relevant documents related to the
Genesis chain and those related to the Gaither chain.  He concluded that AmeriCo obtained ownership
and rights to all right of way and easements, pipeline system and conduits from
Sierra through the Genesis chain of title. 
Additionally, beginning with the grant of a right of way dated January
7, 1932, from Otto Rudel to Humble Oil, Anderson concluded that AmeriCo
obtained ownership and rights to pipeline conduits from Sierra through the
Gaither chain of title.

4.  Affidavit Filed by the State Against

AmeriCo's Easement
Interests in the Five Pipelines

 








After reviewing the motions, responses and supporting evidence and the
Robert A. Watson affidavit and the rights of entry and possession for TxDOT
Parcels 403 and 404, Randy Ward, a lawyer employed by TxDOT in the Right of Way
District Office, determined that through the Gaither chain of title, Gaither,
not AmeriCo, held record title to the 1937 Otto Rudel easement which Ward
described as "a pipeline easement encumbering Parcels 403 and 404, that
portion of the [Bypass Project] in which a detention pond facility is planned
to be built."  Related to the
Genesis chain, Ward "found nothing to indicate that Sierra 1996 B I Limited Partnership
or Howell Pipeline Texas, Inc. or Genesis Crude Oil, L.P. or Americo Energy
Resources, L.L.C. ever held record title to the 1937 Otto Rudel pipeline
easement, recorded at volume 1048, page 249 of the Harris County Deed
Records."

B.  Analysis

The declaratory judgment action was filed to determine whether AmeriCo
had easement rights related to the five pipelines at issue in this case,
pipelines that traversed Parcels 403 and 404. 
The gravamen of the arguments on appeal is whether AmeriCo holds any
easement interests in those pipelines. 
We have reviewed the summary judgment evidence presented by both sides
and conclude the summary judgment evidence raises many fact issues regarding
the existence of AmeriCo's interests, if any, in such easements.

The State presents evidence that AmeriCo holds no easement interests
in the five pipelines.  Its evidence sets
out that AmeriCo holds no pipeline interests because (1) both chains of title
run from the 1937 Otto Rudel easement and Gaither, not AmeriCo, holds that 1937
easement, and (2) no one in the Genesis chain ever held title to the 1937
easement.  








AmeriCo, however, presents evidence that the easements conveyed
through the Genesis chain for Tomball Production (9) and (10) have several
sources including a 1934 easement and a 1934 right of way granted by Otto
Rudel, not one 1937 easement from Otto Rudel. 
Thus, fact issues remain regarding AmeriCo's easement interests in
Tomball Production (9) and (10) through the Genesis chain of title.  Additionally, the evidence provides that
through the Gaither chain of title, the 1937 Rudel conveyance provided for
easement interests in the pipelines designated as AmeriCo(1), Unknown (103) and
Unknown (105 & 60).  While it
establishes that AmeriCo does not hold easement rights to these pipelines,
there is evidence that a concurrent right of use in the easement and right of
way appurtenant to the pipelines was conveyed to AmeriCo.  We also note that Landman Anderson referenced
yet another right of way from which the Gaither chain of title began:  the January 7, 1932  right of way conveyance from Otto Rudel to
Humble Oil.  Therefore, resolution of
issues related to AmeriCo's easement rights in AmeriCo(1), Unknown (103) and
Unknown (105 & 60) through the Gaither chain of title rests on disputed
facts.








In its summary judgment order granting the State's motion and denying
AmeriCo's motion, the trial court declared "[t]hat Americo . . . is not
the record owner of the 1937 Otto Rudel pipeline easement."  We conclude that the trial court erred in
basing its judgment on this declaration because material fact issues remain
related to AmeriCo's easement rights. 
Additionally, because the trial court's remaining declarations, that (1)
AmeriCo has no standing to challenge the current fee owners' intended use of Parcels
403 and 404, (2) there is no evidence that Americo has ever used or operated
the five pipelines, and (3) TxDot or its contractors may lawfully remove the
five identified pipelines traversing Parcels 403 and 404, were based on the
threshold declaration regarding the 1937 Rudel pipeline easement, they were
also made in error.[6]  Appellant's first and second issues are
sustained on the easement issues.[7]

V.  Propriety of Declaratory
Judgment Action








By its fourth issue, AmeriCo challenges the State's use of the
Declaratory Judgment Act (the Act) to bring its claims.  AmeriCo argues that title to the property at
issue must be determined pursuant to the trespass-to-try-title statute, not the
Act, because that statute plainly states it is "the method for
determining title to . . . real property." 
Martin v. Amerman, 133 S.W.3d 262, 267 (Tex. 2004) (emphasis in
original) (contrasting declaratory judgment actions with trespass‑to‑try‑title
actions and holding that fence owners could not proceed under the Act in
boundary dispute); see Tex. Prop.
Code Ann. ' 22.001(a) (Vernon
2000) (providing trespass-to-try-title action is method of determining title to
lands, tenements, or other real property). 
However, the State sued for declaratory judgment that AmeriCo had no
easement rights in the pipelines at issue. 
It sued for a determination of the existence of AmeriCo's easement
rights.  AmeriCo is asserting easement
interests and an interest in the concurrent use of an easement.  The settlement and clarification of rights
with respect to easements falls within the scope of the Act.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 37.002(b) (Vernon
1997); see, e.g., Allegro Isle Condo. Ass'n v. Casa Allegro Corp.,
28 S.W.3d 676, 677 (Tex. App.BCorpus Christi 2000,
no pet.) (appealing from a declaratory judgment in action brought to settle the
rights of two neighboring sets of condominiums concerning an easement between
them); Mack v. Landry, 22 S.W.3d 524, 526 (Tex. App.BHouston [14th Dist.] 2000,
no pet.) (op. on reh'g) (appealing from a declaratory judgment establishing an
easement).  Therefore, the State's use of
the Act to bring its claims is proper, and we overrule AmeriCo's fourth issue.

VI.  Conclusion

Because the resolution of the easement issues in this case rests on
disputed facts, summary judgment is inappropriate.  See Gramercy Ins. Co., 47 S.W.3d at
724.








We,
therefore, affirm the trial court's denial of AmeriCo's motion for summary
judgment and reverse the summary judgment granted in favor of the State and
remand the cause for further proceedings consistent with this opinion.  See FM Props. Operating Co., 22 S.W.3d
at 872.                                                                             

NELDA
V. RODRIGUEZ

Justice

 

Memorandum Opinion
delivered and 

filed this 26th day of
January, 2006.

 











[1]As this is a memorandum opinion and
because all issues of law presented by this case are well settled and the
parties are familiar with the facts, we will not recite the law and the facts
in this opinion except as necessary to advise the parties of the Court=s decision and the basic reasons
for it.  See Tex. R. App. P. 47.4.





[2]We will refer to the five pipelines
at issue in this case by the following TxDOT designations:  (1) AmeriCo(1); (2) Unknown (103); (3)
Unknown (105 & 60); (4) Tomball Production (9); and (5) Tomball Production
(10).  The five pipelines traverse TxDOT
Parcels 403 and 404 that comprise a portion of the Bypass Project in which a
detention pond facility is to be built. 
These parcels are owned by members of the Klein family and the A.B.
Klein Trust.  The Kleins have granted the
State rights of entry and possession to Parcels 403 and 404.





[3]The State first filed a hybrid
motion for summary judgment requesting relief under sections 166a(a), (b) and
166a(i).  See Tex. R. Civ. P. 166a(a), (b) (providing
for a traditional summary judgment), 166a(i) (providing for a no-evidence
summary judgment).  The State asserted
AmeriCo had no existing legal rights of possession, use or ownership in the
claimed pipelines and, thus, had no basis to claim that the State may not
remove or relocate pipelines.  Evidence
attached to the State's motion included deeds to the Bypass property along with
rights of entry and possession to property not yet deeded to the State.  The State claimed that AmeriCo had failed to
show an unbroken chain of conveyances from an initial grant to AmeriCo.  A year later, the State filed a second
no-evidence motion for summary judgment requesting a declaration that AmeriCo
had no legitimate interest in the claimed pipelines, and therefore the State
could remove all such pipelines.  AmeriCo
filed a response attaching various affidavits and documents claiming ownership
in the rights of way and easements relevant to the five pipelines at issue, as
well as ownership interests in the pipelines and pipeline conduits.  The State replied asserting that the documents
filed by AmeriCo demonstrated that AmeriCo did not own the pipeline easement
covering the proposed detention pond area, Parcels 403 and 404 of the Bypass
Project.

 

Incorporating evidence filed in its response, AmeriCo then
filed a motion for summary judgment seeking a declaration that it had ownership
interests in easements, rights of way, pipelines, and pipeline conduits
relating to the five pipelines at issue. 
The State filed a response and a cross motion for summary judgment with
supporting affidavits and attachments, urging the trial court make the
following declarations:  (1) that AmeriCo
is not the record owner of the 1937 Rudel pipeline easement; (2) that there is
no evidence that AmeriCo has ever used or operated the five pipelines at issue;
(3) that AmeriCo has no standing to challenge the current fee owners' intended
use of Parcels 403 and 404; and (4) pursuant to the rights of entry and
possession from the current fee owners of the parcels to TxDOT, the State may
lawfully remove the five identified pipelines traversing Parcels 403 and 404 at
TxDOT's expense.  One of the State's
supporting affidavits discussed the agreed judgment involving Tortuga, Tandem
and the State.

 

Concluding that the issue of res
judicata had been raised, AmeriCo filed a supplement to its summary judgment
motion and to its response to the State's motion, arguing that the State's res
judicata argument was defective because, among other things, there was no
evidence to establish that the pipelines owned by AmeriCo and those owned by
Tortuga or Tandem were the same and if they were the same, that the ownership
rights, if any, were concurrent at most. 
AmeriCo also contended that the State had taken a new position that
AmeriCo owned certain pipelines and pipeline conduits obtained from Sierra
through the Gaither chain of title, but because they did not constitute
fixtures or improvements, AmeriCo was not entitled to compensation.  We cannot, however, find in the record where
the State urged either res judicata or fixtures as a ground for the granting of
its motion.  Because a summary judgment
cannot be affirmed on a ground not raised in the motion, we do not address
appellant's arguments presented in its second issue related to fixtures and in
its third issue related to res judicata.  See Lewis v. Nolan, 105 S.W.3d 185,
189‑90 (Tex. App.BHouston [14th Dist.] 2003, pet.
denied).  We also note that the trial court did not enter such
declarations in its May 6, 2005 order. 
Furthermore, we do not address whether the concurrent use in and access
to the easements and rights of way, interests AmeriCo claims through the
Gaither chain, were at most licenses, an argument the State asserts for the
first time on appeal.





[4]On August 11, 2005, this Court
entered a cease and desist order, stayed all proceedings below, and accelerated
the appeal.  Subsequently, the supreme
court stayed our order to the extent it interfered "with any party's right
or ability to seek or be granted relief, including a temporary restraining
order or other temporary relief." 
After the parties reached an agreement regarding the State's ability to
proceed with the Bypass Project, the supreme court lifted its stay.  We, in turn, lifted our stay and cease and
desist order, leaving the accelerated nature of the appeal in place.

 

AmeriCo intervened in a pending
inverse condemnation suit against the State, styled Tandem Energy Corp., et
al. v. The State of Texas, et al., No. 802,039 in the County Court at Law
No. 3 of Harris County, Texas.  It has
been abated pending the outcome of this case.





[5]In
this case, the trial court issued a general order denying AmeriCo's traditional
summary judgment motion, and granting the State's motion.  It is not readily apparent from the motions
or the trial court's order whether it granted the summary judgment on the
State's traditional motion or on its no-evidence motion.  However, AmeriCo filed a response to the State's no-evidence
motion and attached affidavits that raised issues of material fact regarding
the ownership of the pipelines in question. 
This evidence amounted to more than a mere surmise or suspicion of a
fact issue.  See King Ranch v. Chapman,
118 S.W.3d 742, 750 (Tex. 2003) (setting out standard of review for no-evidence
summary judgment).  Therefore, if the
trial court granted summary judgment for the State on the basis of its
no-evidence motion, it erred in doing so. 
See Tex. R. Civ. P. 166a(i)
(providing that after an adequate time for discovery, the party without the
burden of proof may, without presenting evidence, move for summary judgment on
the ground that there is no evidence to support an essential element of the
nonmovant's claim or defense, and the trial court must grant the motion unless
the nonmovant produces summary judgment evidence that raises a genuine issue of
material fact).  Having so concluded, we
will construe the trial court's order as one granting the State's traditional
motion for summary judgment and will review it accordingly.

 





[6]The State also submitted affidavit
evidence to support its position regarding pipeline ownership and its right to
remove those pipelines.  It filed the
affidavit of Lori Kathleen Klein Quinn, who stated that she was one of the fee
simple owners of Parcels 403 and 404 and that neither she nor any of the other
fee owners was aware of any oil and gas leases with AmeriCo involving Parcels
403 and 404 and that no payments had been received from AmeriCo.  Larry Blackburn, a registered professional
engineer and the TxDOT project supervisor responsible for overall design and
plan preparation for the Bypass Project, provided in his affidavit that he has
no reason to believe AmeriCo ever owned or operated the pipelines known as Tomball
Production 9 or 10.  In an October 30,
2003 letter, Genesis had indicated that it sold its pipelines in the area to
Tomball Production Company, Inc., which is an entity associated or affiliated
with Tortuga.  To support the State's
position that AmeriCo did not own these pipelines, Blackburn stated that the
pipelines are now in the process of being relocated pursuant to agreed judgment
wherein Tandem and Tortuga agreed TxDOT could remove or relocate these
pipelines at TxDOT expense.  The State
also submitted the affidavit of Deborah Livelly, Utility Coordinator for
TxDOT.  She concluded that she had
"no basis for believing that any of the five pipelines AmeriCo is now
claiming have ever been used or operated by Americo."  The basis for this conclusion was that at no
time during her attempts to complete a utility adjustment relocation package
with AmeriCo did any one from AmeriCo provide her with day-to-day operating
data about its pipelines so that the relocation work could be scheduled.  Finally, Randy Ward whose legal work focuses
on Texas condemnation and real property law, concluded that the State, acting
under the rights of entry and possession grants from the fee simple owners or
Parcels 403 and 404, may lawfully remove the pipelines claimed by AmeriCo on
these properties.  This evidence,
however, supports the trial court's declarations which we have concluded were
made in error because they were based on its threshold declaration regarding
AmeriCo's easement rights.





[7]We have already determined that the
remaining arguments and issues involving res judicata and fixtures that are
presented by AmeriCo in its second and third issues are not properly before
this Court.  See footnote 3.